# CHATTANOOGA NATIONAL BUILDING AND LOAN ASSOCIATION *v.* DENSON.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 206. Submitted March 12, 1903.—Decided April 27, 1903.

The highest court of Alabama has held that under the constitutional and statutory provisions of that State any act in the exercise of its corporate functions is forbidden to a foreign corporation which has not complied with the constitution and the statute in regard to filing instrument designating agent and place of business, and that contracts resulting from such acts are illegal and cannot be enforced in the courts.

*Held,* that this applied to a building and loan association of Tennessee making a loan in Tennessee secured by certain shares of its own stock and also by mortgage on certain real estate in Alabama, and that although the association had complied with certain provisions of the law, the fact that it had not designated an agent as required by the constitution and statutes was a bar to the foreclosure of the mortgage in the courts of Alabama.

SUIT to foreclose a mortgage given by the respondents to the petitioner to secure a note for the sum of $5000, given as evidence of a loan made by petitioner to respondents. The petitioner is a building and loan association, and a corporation of the State of Tennessee; the respondents are citizens of Ala-

bama. One of the defences of respondents is that the trans-actions were illegal because petitioner had not complied with the laws of Alabama in regard to foreign corporations doing business in the State. This is the only defence with which we are concerned. The Circuit Court rendered a decree foreclos-ing the mortgage, which was reversed by the Circuit Court of Appeals, and the bill was directed to be dismissed. 107 Fed. Rep. 777. The case was then brought here by certiorari.

The constitution of the State of Alabama provides as follows:

"4. No foreign corporation shall do any business in this State without having at least one known place of business and an au-thorized agent or agents therein; and such corporation may be sued in any county where it does business by service of process upon an agent anywhere in this State." Constitution Alabama, Art. XIV.

The material parts of the Code of the State passed in execu-tion of the constitution are as follows:

"1316. Foreign corporation must file instrument of writing designating agent and place of business in this State.—Every corporation not organized under the laws of this State shall, before engaging in or transacting any business in this State, file an instrument of writing, under the seal of the corporation and signed officially by the president and secretary thereof, designating at least one known place of business in this State and an authorized agent or agents residing thereat; and when any such corporation shall abandon or change its place of bus-iness as designated in such instrument, or shall substitute an-other agent or agents for the agent or agents designated in such instrument of writing, such corporation shall file a new instrument of writing as herein provided, before transacting any further business in this State." Code Alabama, 1896.

"1318. Unlawful for foreign corporation to transact business in this State before declaration filed; penalty.—It is unlawful for any foreign corporation to engage in or transact any busi-ness in this State before filing the written instrument provided for in the two preceding sections; and any such corporation that engages in or transacts any business in this State without complying with the provisions of the two preceding sections

shall, for each offence, forfeit and pay to the State the sum of one thousand dollars.

"1319. *Unlawful to act as agent of foreign corporation before such declaration is filed; penalty.*—It is unlawful for any person to act as agent or transact any business, directly or indirectly, in this State, for or on behalf of any foreign corporation which has not designated a known place of business in this State and an authorized agent or agents residing thereat, as required in this article; and any person so doing shall, for each offence, forfeit and pay to the State the sum of five hundred dollars." Code Alabama, 1896.

There was no point made on the by-laws of the association, and by agreement they were omitted from the record on appeal to the Circuit Court of Appeals and are also omitted here. And it was also stipulated " that the complainant is a corporation chartered and organized under and in accordance with the public statutes of the State of Tennessee, authorizing the creation of corporations for carrying on the business of building and loan associations; that its principal office and place of business is, and was at the time the loan involved in this case was made, and has ever since continuously been, in the city of Chattanooga, State of Tennessee; and that the loan to defendant, William H. Denson, involved in this case was made in accordance with the power and authority conferred on complainant by its charter, and in the manner prescribed by its by-laws."

The note executed by respondents was as follows:

"$5000.00.        CHATTANOOGA, TENNESSEE, *June* 10, 1895.

"On or before nine years from date I promise to pay the Chattanooga National Building and Loan Association, at its home office, Chattanooga, Tennessee, five thousand dollars with interest on the sum of twenty-five hundred dollars, at the rate of six per cent per annum, payable monthly.

\*    \*    \*    \*    \*    \*    \*    \*

"It is further understood that this note is made with reference to and under the laws of the State of Tennessee, and if paid before seven years from this date such rebate from the premium included herein will be allowed as the board of directors of said association shall deem equitable."

The omitted part recited that the note was for money borrowed on fifty shares of stock, and expressed certain conditions of the non-payment of the note when due, or the non-payment of premiums or assessments ; and also expressed the right of petitioner in case of such non-payments to collect the debt though not due and to foreclose the mortgage. The mortgage covered lots in the city of Gadsden, Elowah County, State of Alabama. It repeated the note and its conditions and contained others. The facts connected with the execution of the note and mortgage are stated by the Circuit Court of Appeals as follows :

"The complainant below, the Chattanooga National Building and Loan Association, is, and was at the time the loan to Mr. Denson was made, a corporation under the laws of the State of Tennessee, with its principal office in the city of Chattanooga, in that State. Among its corporate functions was the authorization, and, so far as we are advised, its sole business was, to loan its funds to its stockholders on real estate security. It had no local office or agent in Alabama, but it had a traveling agent, whose business it was to solicit subscriptions to its stock, and to obtain applications for loans, and submit the same to the home office of the association at Chattanooga.

"On the 25th of April, 1895, appellant Denson, who was a resident of Gadsden, Alabama, on the suggestion and at the solicitation of the agent, signed at that place a written application for fifty shares of stock in the association, complainant below, appellee in this court. This application was forwarded by the agent to whom Mr. Denson delivered it to the home office, where the stock was issued, and returned to the agent, to be by him delivered to Mr. Denson. On the same day on which he applied for his stock, Mr. Denson signed a written application to the association for a loan of $2500 on fifty shares of stock he had applied for. He offered a premium of $2500 for the loan, and proposed to secure the loan and premium, if his application should be granted, by a mortgage on certain real estate in Gadsden, Alabama, which he represented to be of the value in all of about $9000. This application was accompanied by the report of two parties, selected by the associa-

tion, fixing the value of the property which Denson proposed to mortgage at $8000, and the certificate of an attorney, also selected by the association, with reference to the condition of the title. This application was forwarded by the agent to the home office in Chattanooga, where it was submitted, along with other applications, to the board of directors, by whom the application was granted, and the loan directed to be made in accordance with the charter and by-laws of the association. Thereupon a note and deed of trust were prepared at the home office, and were sent to the agent by whom Mr. Denson's application had been taken and forwarded; and at the same time the check of the association on the Chattanooga National Bank of Chattanooga, Tennessee, in favor of W. H. Denson, for the sum of $2367.50, was sent to one D. P. Goodhue, of Gadsden, with instructions to him to deliver said check to Mr. Denson when he should have executed and delivered the note and deed of trust. Upon the execution of the note and deed of trust by Denson and wife, and the delivery of the same to the agent, all at Gadsden, Alabama, the agent delivered to Denson the check for $2367.50, directing him to present the same to the First National Bank of Gadsden, which would pay the same. The check was presented to the said bank, and the face thereof paid over to Denson, as the cashier said, 'under an understanding with the said Building and Loan Association, and that the Chattanooga National Bank, on which the check was drawn, would pay the same on presentation.' "

And the following testimony of the secretary of the association was quoted:

" At the time the loan to defendant Denson was made, complainant association had been for some time soliciting subscriptions to stock and receiving applications for loans in the State of Alabama, and had paid a tax or license fee required under the laws of the State of Alabama for foreign corporations proposing to do business in that State; and complainant's officers supposed and understood that the payment of this fee or tax was the only condition with which it was necessary for them to comply in order to be entitled to do business in that State. Subsequently, however, and some months after the loan to de-

fendant Denson was made, complainant was informed by an attorney in the State of Alabama that the Alabama statutes required foreign corporations doing business in Alabama to designate a local agent on whom process against the association could be served, and also a local place of business in that State. Thereupon complainant promptly designated such local agent and place of business, and continued up to the second of October, 1899, to pay the license tax or fee required of non-resident corporations doing business in Alabama, and to keep a local agent and place of business in that State."

. *Mr. Robert Pritchard* and *Mr. T. B. Sizer* for petitioner.

*Mr. Oscar W. Underwood* and *Mr. William H. Denson* for respondents.

MR. JUSTICE MCKENNA, after making the foregoing statement, delivered the opinion of the court.

The question presented by the case is, did the loan made by petitioner and the taking for security the note and mortgage under the circumstances presented by the record constitute a doing of business in the State, within the meaning of the constitution and laws of the State?

It was said by the Supreme Court of Alabama, *Beard v. The Union & American Publishing Company,* 71 Alabama, 60, that to constitute a doing of business within the State "there must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created." It was held, however, that receiving a subscription to a newspaper, or collecting the money therefor was not doing business in the State "within the principle." In a subsequent case, *Dudley v. Collier & Pinckard,* 87 Alabama, 431, the court announced that "a loan or borrowing of money by or from" a foreign corporation is a doing of business within the State, and "is an unlawful act, subjecting both the agents and company to a heavy penalty." The provisions of the statute prescribing penalties were considered, and their effect was declared to be not only to punish offenders against the statute but to render

their contracts void. Many cases were cited in support of the conclusion as a proper deduction from the imposition of the penalties. And the principle was applied to make illegal a contract with an agent for services rendered in procuring a loan for the use of the corporation.

In *Farrior* v. *New England Mortgage, Security Co.*, 88 Alabama, 275, it was said that the constitution prohibited the making of a single contract or the doing of a single act of business by a foreign corporation in the exercise of a corporate function, as well as the engaging in or carrying on its business generally. To the same effect are *Mullens* v. *American Freehold Land Mortgage Co.*, 88 Alabama, 280; *Ginn* v. *New England Mortgage Security Co.*, 92 Alabama, 135; *Sullivan* v. *Sullivan Timber Co.*, 103 Alabama, 371.

These cases constitute an interpretation of the constitutional and statutory provisions, and clearly hold that any act in the exercise of corporate functions is forbidden to a foreign corporation which has not complied with the constitution and statute, and that the contracts hence resulting are illegal and cannot be enforced in the courts.

The petitioner is a building and loan association. Its corporate purpose is to lend money to its stockholders. The respondent Denson was one of its stockholders, and manifestly, regarding the essence of the transactions between them, they constituted a doing of business within the State of Alabama. But, it is insisted, that on account of the form and terms of the instruments and by operation of law the loans must be regarded as having been made in Tennessee. It is said: "The note and mortgage were drawn in Tennessee, and by their express terms were payable there. The note is dated on its face at Chattanooga, Tennessee, and expressly stipulates that it 'is made with reference to and under the laws of Tennessee.'" And further, that the petitioner's part of all the transactions was performed in the State of Tennessee, "and only those acts which the borrower was required to do *as a condition precedent* to the loan of the money to him were performed in Alabama." It is hence deduced that the business done must be regarded as having been done in Tennessee.

Counsel has discussed at some length the situs of contracts and by the law of what place their obligation is determined. We think, however, that the discussion is not relevant. It withdraws our consideration from the constitution and statute of Alabama; and, it is manifest, the contention based upon it, if yielded to, would defeat their purpose. The prohibition is directed to the doing of any business in the State in the exercise of corporate functions; and there can be no doubt that petitioner considered that it was exercising such functions in the State. Its secretary testified that " at the time the loan to defendant Denson was made complainant association had been for some time soliciting subscriptions to stock and receiving applications for loans in the State of Alabama, and had paid a tax or license fee required under the laws of the State of Alabama for foreign corporations proposing to do business in that State, and complainant's officers supposed and understood that the payment of this fee or tax was the only condition with which it was necessary for them to comply in order to be entitled to do business in that State." The application of Denson was presumably solicited as other applications were, and if what was done in pursuance of it did not constitute doing business in the State, the effect would be, as expressed by the Circuit Court of Appeals, that petitioner " and other foreign associations engaged in the same business of loaning money on real security, may safely flood the State of Alabama with soliciting agents, make all the negotiations for loans, take real estate securities therefor, and fully transact all other business pertaining to their corporate functions as though incorporated therein, and yet neither be obliged to have a known place of business or any authorized agent within the State, nor pay any license tax or fee, as required of non-resident corporations doing business therein."

The case of *Fritts* v. *Palmer*, 132 U. S. 282, does not relieve from the effect of the Alabama decisions and from the necessity of following them. The action was ejectment to recover certain real property in Colorado. The title of one of the parties was derived through the Comstock Mining Company, a Missouri corporation, which, before its purchase of the property, had been en-

gaged in the prosecution of its mining business in the State, but it had not complied with the constitution and statutes of the State prescribing the terms upon which foreign corporations might do business in the State. The constitutional provision was substantially like that of Alabama, but the statutes were materially different, and, besides, there had been no decision of the Supreme Court of Colorado interpreting the statutes. The only penalty expressed in the statutes was the imposition of personal liability upon the officers, agents and stockholders of the corporation for any and all contracts made within the State during the time the corporation was in default. It was held that the fair implication was that "in the judgment of the legislature of Colorado, this penalty was ample to effect the object of the statutes." And it was said that it was not for the judiciary, at the instance of or for the benefit of private parties, to forfeit property which had been conveyed to the corporation and by it to others. *Fritts* v. *Palmer*, therefore, was but the interpretation of a particular statute, and there is not a word in it which denies or questions the power of a State to make void the contracts of a foreign corporation which is doing business in the State in violation of its laws.

It is urged by petitioner that it thought it had complied with the law of Alabama, and it was not an intentional offender against it, and, therefore, should not be "repelled from court." But the latter consequence has been decided to result from non-compliance with the statute, and we cannot grant an exemption from it. The statute makes no distinction between an inadvertent and a conscious violation of its provisions, and a familiar legal maxim precludes a defence based on that distinction. Nor can the payment of the license fee be urged as a justification for omitting to comply with the statute. Such payment was one condition to be performed by a foreign corporation; the designation of a known place of business and an authorized agent was another, and was of so much importance as to be enjoined by the constitution of the State.

It is contended that this case cannot be distinguished from *Bedford* v. *Eastern Building & Loan Association*, 181 U. S. 227, and must be ruled by that case.

We think there is a marked distinction. In the *Bedford* case the contract was legally entered into and was entitled to be enforced. In the case at bar the contract was made in violation of the statute of Alabama, and it cannot, therefore, claim the protection given to the contract in the other case.

*Decree affirmed.*

Mr. Justice Harlan dissents.