BOTHWELL ET AL. *v.* BUCKBEE, MEARS COMPANY.

CERTIORARI TO THE SUPREME COURT OF MINNESOTA.

No. 169.  Submitted October 3, 1927.—Decided December 5, 1927.

1. Since a contract of insurance, although made with a corporation having its office in a State other than that in which the insured resides and in which the interest insured is located, is not interstate commerce, a State may prohibit a foreign insurance company from doing business within its borders without first obtaining a license. P. 276.

2. While a State may not forbid a resident from making a contract with a foreign insurance company outside the State, it may forbid the solicitation of such contract within the State by a company which has not complied with its laws, and may refuse the aid of its courts in enforcing a contract made in another State but growing out of such solicitation.  P. 276.

3. A State may refuse to enforce a contract made by one of its residents in another State with a foreign insurance company, where the contract contemplates the performance by the company within the State of acts forbidden by its laws.  P. 278.

4. On writ of error or certiorari to a State court, this court will not take judicial notice of statutes of another State not proved or judicially noticed in the court below.  P. 279.

169 Minn. 516, affirmed.

CERTIORARI, 273 U. S. 689, to a judgment of the Supreme Court of Minnesota affirming dismissal of an action brought by the receivers of a Maryland insurance company to recover the amount of an assessment made on the respondents under a policy for strike insurance.  See also 166 Minn. 285.

*Messrs. Morton Barrows, George P. Metcalf,* and *Walter L. Clark* were on the brief for petitioners.

*Messrs. William H. Oppenheimer* and *Montreville J. Brown* were on the brief for respondent.

· MR. JUSTICE BRANDEIS delivered the opinion of the Court.

· This action was brought in a court of Minnesota. The plaintiffs below, petitioners here, are the receivers of the Employers' Mutual Insurance and Service Company, a Maryland corporation. The defendant, Buckbee, Mears Co., a Minnesota corporation, is a printing concern with its plant and only place of business in that State. The action is brought for the amount of an assessment made upon the insured pursuant to a policy for " strike insurance " issued by the Company. The only defense relied upon below, or open here, is that the Company (and hence its receivers) cannot maintain a suit in a court of Minnesota, because it did not, before writing the policy, comply with the provisions of the Minnesota law relating to foreign insurance companies doing business within the State. After proceedings which it is unnecessary to detail, 166 Minn. 285, the trial court sustained that defense. Compare *Seamans* v. *Christian Bros. Mill Co.*, 66 Minn. 205. Its judgment was affirmed by the highest court of the State. 169 Minn. 516. This Court granted a writ of certiorari. 273 U. S. 689.

. The statutes of Minnesota provide that a foreign insurance company shall not do business within the State unless it secures a license so to do; and that to this end it must file a copy of its charter and by-laws and a statement showing its financial condition; must appoint the Insurance Commissioner its attorney in fact upon whom proofs of loss and process in any action may be served; and must make a deposit of securities (or its equivalent) for the protection of Minnesota policy holders, G. S. 1923, §§ 3313, 3318, 3319, 3711, 3713, 3716. The statutes further require that all persons engaged in the solicitation of applications of insurance shall be licensed; and they declare specifically that it shall be unlawful for any person,

firm or corporation to solicit or make or aid in the soliciting or making of any contract of insurance not authorized by the laws of the State, and that any person, firm or corporation not complying with the requirements as to the licensing of agents and solicitors shall be guilty of a misdemeanor, G. S. 1923, §§ 3314, 3348, 3349, 3366.

It is stipulated that the Company did not comply with the requirements of the Minnesota law; and that the contract was effected by the Company's sending a representative into the State who solicited the insurance there, by the defendant's filling out in Minnesota one of the blank forms for application distributed by the Company's agent there, and by the defendant's then mailing it, together with a check for the first premium, to the Company's office in Maryland, upon receipt of which the policy was signed by the Company in Maryland and mailed to the defendant.

The receivers rely upon *Allgeyer* v. *Louisiana,* 165 U. S. 578, and *St. Louis Cotton Compress Co.* v. *Arkansas,* 260 U. S. 346. Their contention is that, since the contract was made in Maryland, it was not subject to the prohibitions of the Minnesota law; that the contract was valid where made; and that, hence, Minnesota may not refuse the aid of its courts for enforcing it. Those cases are not applicable. They hold that a State may not prohibit either a citizen or a resident from making a contract—in other words, doing an act—in another State. The defense here rests upon a wholly different ground. It is that the making of the contract involved, and the performance of the contract required, the doing in Minnesota of acts which its laws prohibited; and that the contract contemplated the Company's doing there still other forbidden acts.

A contract of insurance, although made with a corporation having its office in a State other than that in which the insured resides and in which the interest insured is

located, is not interstate commerce. *New York Life Insurance Co.* v. *Deer Lodge County,* 231 U. S. 495; *National Union Fire Insurance Co.* v. *Wanberg,* 260 U. S. 71, 75. Hence, Minnesota had the power to prohibit the Employers' Mutual Company from doing business within the State without first complying with the prescribed conditions; and could refuse the aid of its courts in enforcing a contract which involved violation of its laws, *Chattanooga Building & Loan Assoc.* v. *Denson,* 189 U. S. 408; *Interstate Amusement Co.* v. *Albert,* 239 U. S. 560. See also *Munday* v. *Wisconsin Trust Co.,* 252 U. S. 499. The parties had, under the *Allgeyer* and *Cotton Compress* cases, the constitutional right to make in Maryland a contract of insurance despite a prohibition of the Minnesota law. But the Company, a foreign corporation, had no constitutional right to solicit the insurance in Minnesota by means of an agent present within that State. For the act of solicitation there the State might have punished the agent; and also the Company as principal. *Hooper* v. *California,* 155 U. S. 648; *Nutting* v. *Massachusetts,* 183 U. S. 533. Compare *Commonwealth* v. *Nutting,* 175 Mass. 154. As the contract was not a later independent act, but grew immediately out of the illegal solicitation, and was a part of the same transaction, being inseparably tied to it by the use of the application blank illegally distributed, the contract was tainted with the illegality. *Armstrong* v. *Toler,* 11 Wheat. 258. Because of such taint the State, under rules of general application, would have had the right to refuse to enforce it, although made in Maryland, even if it had been wholly unobjectionable in its provisions. Compare *Delamater* v. *South Dakota,* 205 U. S. 93, 97–103; *American Fire Insurance Co.* v. *King Lumber Co.,* 250 U. S. 2, 11–12.

But the contract was also in its terms obnoxious to the Minnesota law. It required the Company to perform, in Minnesota, acts which it was prohibited from doing there.

The Company agreed to defend, on behalf of the insured, any suits or other legal proceedings brought by striking employees against the insured to enforce claims arising out of any strike, and to pay any expenses incurred by the Company in so doing. This covenant necessarily involved performance in Minnesota, as suits against the insured would be brought in that State, among other reasons, because it was a Minnesota corporation and had no place of business elsewhere. The Company also covenanted to indemnify the insured for "direct loss of average daily net profits and fixed charges" due to strikes. The contract did not specify the place where payment for the loss should be made, so that under the common rule the insurer would be required to make the payment in Minnesota, the domicile of the insured. *Pennsylvania Mutual Fire Insurance Co.* v. *Meyer*, 197 U. S. 407, 416. .

Besides these acts which the Company bound itself to perform in Minnesota, the contract reserved to it the right to do, in Minnesota, and the Company contemplated doing there, others acts forbidden by its laws, namely, the right to inspect the plant and the books of account and papers of the business; and the right to interrogate persons connected with it. Moreover, the contract clearly contemplates that not only these examinations, but the appraisals and other acts provided to be done by the Company in the course of the adjustment of losses, shall be done in Minnesota. All these things were activities of the insurance business which the Company was prohibited by valid statutes from doing within the State. *Pennsylvania Lumbermen's Mutual Fire Insurance Co.* v. *Meyer; supra*, pp. 414–5. Compare *Commercial Mutual Accident Co.* v. *Davis*, 213 U. S. 245, 256. Under rules of law generally applicable a State may refuse to enforce a contract which provides for doing within it an act prohibited by its laws. Compare *The Kensington*, 183 U. S. 263, 269; *Bond* v. *Hume*, 243 U. S 15, 21; *Union*

*Trust Co.* v. *Grosman,* 245 U. S. 412, 416; *Grell* v. *Levy,* 16 C. B. (N. S.) 73.

It is suggested that under a Maryland statute the petitioners are not mere equity receivers but quasi-assignees, and that this places them on a different footing from that which the insurance company would have occupied if the suit had been brought by it. In support of this contention, the full faith and credit clause of the Constitution and cases such as *Converse* v. *Hamilton,* 224 U. S. 243, are invoked. But the Maryland statute was not set up in the state courts, and as they did not take judicial notice of it, it will not be noticed here. *Hanley* v. *Donoghue,* 116 U. S. 1; *Gasquet* v. *Lapeyre,* 242 U. S. 367, 371. For this and other reasons we have no occasion to enquire into its effect.

*Affirmed.*