**BARTLETT v. DOHERTY.**

**KNOWLTON v. SAME.**

**TREMBLY v. SAME.**

District Court, D. New Hampshire.
April 9, 1935.

See, also, (D. C.) 8 F. Supp. 763.

George L. Dillaway, of Boston, Mass., and Oscar Moreau, of Manchester, N. H., for plaintiffs.

Demond, Woodworth, Sulloway, Piper & Jones, of Concord, N. H., for defendant.

MORRIS, District Judge.

These are actions brought by the plaintiffs to recover the purchase price of securities bought by them from H. L. Doherty & Co., through Leonard O. Parent, a salesman of the defendant. All three cases involve many questions of fact and law in common; therefore it seems unnecessary to treat them individually except in so far as there is a variation with respect to the facts.

H. L. Doherty & Co., is a sole partnership wholly owned by H. L. Doherty and having its principal place of business in New York City. It maintains branch offices in different states, one of which was located at Boston. Its principal business was the sale of securities. During the year 1929 the defendant employed one Leonard O. Parent of Manchester, N. H., as a salesman for the New Hampshire territory.

The plaintiffs were and are residents of Manchester, N. H. The defendant, H. L. Doherty & Co., was duly licensed under New Hampshire Public Laws, c. 284 as a dealer in securities within the state of New Hampshire. The securities involved in these suits are: Cities Service, common stock and Arkansas Natural Gas Corporation class A common stock. These securities were duly qualified for sale under Public Laws, c. 284 in New Hampshire.

The defendant had been registered as a nonresident dealer from 1922 to 1932,

and had filed an irrevocable power of attorney as required by the statute.

In 1929 the defendant registered a number of salesmen as his agents in New Hampshire, but did not register Leonard O. Parent. Parent had worked for the defendant as a licensed agent and salesman in the years 1923, 1924, 1925, 1926, 1928, but he was not licensed for the year 1929. He was, however, licensed for the years 1931 and a part of 1932. In 1928 Parent was working out of and under the jurisdiction of the home office in New York and continued to do so until July 1, 1929, at which time he was shifted to the Boston office. No complaint had been lodged with the insurance department as to Parent's activities in 1929 or any other year, and it does not appear that there was any reason why he would not have received a license in 1929 if it had been applied for in accordance with the statute.

The defendants claim that it was due to a mere oversight and an error in their New York records. Be this as it may, the fact remains that Parent was not a licensed agent for the year 1929.

Knowlton Transactions.

From the evidence I find that Leon S. Knowlton had six transactions in which he purchased stock through agent Parent from the defendant.

*Purchases 1 and 2.* On February 12, 1929, the plaintiff Knowlton gave Parent a check for $2,402.50, and an order for 20 shares of Cities Service common stock at 95⅜ and an order for five shares of common stock at 99 as evidenced by receipt to that effect signed "Henry L. Doherty & Company, L. O. Parent agent." These sales were confirmed by the New York office February 13 and 20, 1929. On the same day the New York stamp tax on sales of stock was paid by the defendant. The certificate for five shares was issued February 18, 1929, and receipted for by the plaintiff February 20, 1929. This certificate for five shares was canceled July 17, 1929, and a certificate for 20 shares was issued in its stead at the time the stock was split up.

*Purchase 3.* The plaintiff's third transaction was an installment purchase of 75 shares at 36⅝ per share on July 8, 1929. The initial payment of $375, on July 8, 1929, was given to Parent. At this time Parent was working out of the Boston office to which the order was transmitted and was telegraphed by the Boston office to the New York office. Confirmation of the sale came back through the Boston office to Parent July 10, 1929. All subsequent installment payments were sent to Boston until payments were completed May 1, 1930. On May 8, 1930, the defendant sent the plaintiff a statement of account showing payments in full and deducting from the last payment interest due the plaintiff of $71.99. The full amount of the installment purchase was $2,746.88.

*Purchase 4.* On July 26, 1929, the plaintiff gave Parent an order for 200 shares of Cities Service common stock. The amount paid was $8,550. The sale was confirmed and the certificates were shipped, sight draft attached, to the Amoskeag Savings Bank at Manchester, N. H. This was done at the direction of the plaintiff. These shares were originally issued in the name of Leon F. Knowlton, but were later returned and reissued in the name of Leon S. Knowlton, plaintiff's correct name.

*Purchase 5.* On or about July 10, 1929, the plaintiff gave Parent an order for 50 shares of Arkansas Natural Gas Corporation class A common stock. This sale was confirmed from Boston July 11, 1929, and plaintiff's check therefor in the sum of $525 is dated July 12, 1929. The receipt for the delivery of the stock is dated July 19, 1929.

*Purchase 6.* On or about July 12, 1929, plaintiff gave Parent another order for 50 shares of Arkansas Natural Gas Corporation, class A, common stock, the confirmation of which bears date of July 12, 1929, from the Boston office. The receipt in payment therefor bears date of July 16, 1929. The plaintiff's receipt for the securities is dated July 24, 1929. The purchase price was $600.

The New York stamp tax was paid on all of the above-mentioned transfers.

The plaintiff has received on the above-mentioned stock the sum of $345.67, in cash dividends in accordance with plaintiff's amended specifications filed April 2, 1935. He has also received some stock dividends. The stock purchased and the stock dividends the plaintiff is willing and ready to surrender.

Joseph O. Tremblay Transactions.

From the evidence I find that Joseph O. Tremblay had two transactions with H. L. Doherty & Co. through agent Parent, the first one being February 11, 1929, when Tremblay gave Parent a check for $937.50 for 40 shares of Cities Service Company

common stock. Parent forwarded the order to the defendant in New York and the stock was mailed from New York and delivered to Tremblay in New Hampshire.

On July 27, 1929, Tremblay gave an order for 50 shares of Cities Service stock and a check for $2,275. The order and check were given to Parent and the plaintiff took Parent's receipt for the money. Parent forwarded the order and check to the defendant's Boston office, the transaction was confirmed by wire from the New York office to the Boston office and from the Boston office to Tremblay July 27, 1929. Tremblay gave orders that 25 shares of the stock be issued in the name of his wife, Emeline B. Tremblay, and the other 25 shares to himself. The stock was so issued. Cash dividends have been paid on the fifty shares and credited on plaintiff's amended specifications to the amount of $90.31. The plaintiffs have also received stock dividends and are ready and willing to surrender the stock purchase and the stock dividends received thereon.

This transaction was entered into by the plaintiff, Joseph O. Tremblay and the money paid by him. The fact that he ordered 25 shares of the stock made out in his wife's name does not appear to affect the transaction, and, as we understood counsel at the trial, no distinction is to be made, and the matter is to be considered as one transaction.

The Tremblay orders were confirmed by the New York office, and the New York transfer tax was paid in each instance.

### Fred G. Bartlett Transactions.

From the evidence I find that Fred G. Bartlett on November 16, 1929, bought through agent Parent 25 shares of Cities Service stock and paid therefor the sum of $750. The transaction disclosed the following facts: The plaintiff called the Boston office for information concerning some stock previously purchased through other agents. The call was referred to Parent who was then present in the Boston office. Parent offered to sell Bartlett more stock and on Parent's solicitation and advice the above-mentioned 25 shares were purchased. A check was mailed by Bartlett to the Boston office and the stock was delivered and accepted by Bartlett in New Hampshire, being sent by registered mail.

As in all other transactions the confirmation came from the New York office, in this instance being sent through the Boston office. The New York stamp tax was paid.

I find as a fact that the defendant knew or should have known that no registration for L. O. Parent as a defendant's salesman in New Hampshire had been applied for or had been issued and that no payment therefor had been made and no certificate of registration had been issued from the office of the Commissioner of Insurance.

I find that the defendant, Harry L. Doherty & Co., knew the requirements of the New Hampshire laws respecting the sale of securities, because on previous years, with respect to Parent and other agents, he had complied with the same.

I find that Parent, as a salesman and agent for the defendant, took orders for stock in Manchester, N. H., that he transmitted the orders taken prior to July 1, 1929, direct to the New York office; and subsequent to July 1, 1929, direct to the Boston office, by which the orders were transmitted to the New York office, and that in all instances confirmation of the sale was made by the home office in New York.

In most instances the checks given in payment for the securities were made payable to H. L. Doherty & Co. In one of the Knowlton transactions the certificates and draft were sent to a bank in Manchester for payment and delivery. This was the Knowlton transaction No. 4. The Knowlton transaction No. 3, was an installment purchase of 75 shares and the first installment check for $375 was made payable to L. O. Parent and by him cashed at a Manchester, N. H., bank.

So far as appears, all the orders transmitted by Parent to the defendant were accepted. There was nothing to indicate that Parent did not have full authority to make contracts for the sale of securities as local agent for the defendant.

### Rulings of Law.

As to all of these transactions, the plaintiffs claim that, since Parent was unlicensed, the sales were void, and that the plaintiffs have a right to recover the money paid.

The defendant asserts four separate defenses to these actions:

1. The plaintiffs by acceptance of dividends and unreasonable delay are barred from maintaining these actions by laches.

2. The fact that Parent was not licensed does not entitle the plaintiffs to rescind.

468

3. These sales were made in New York, the New Hampshire "Blue Sky Law" has no extra territorial effect, and therefore cannot make these sales void.

4. The transactions complained of were made in interstate commerce, and if the violation complained of has the effect of making the sales void, the act is unconstitutional as being an undue burden on interstate commerce in contravention of article 1, § 8, cl. 3 of the Federal Constitution.

This case was before this court on demurrer, and most of the legal questions involved were then considered and may be found in the published opinion Bartlett v. Doherty, 8 F. Supp. 763. I quoted therein from certain provisions of the New Hampshire Blue Sky Law, so called, and reference was made to numerous decisions of the New Hampshire Supreme Court which appeared pertinent to the issues then involved.

As the facts upon trial have developed practically the same questions then considered, it does not seem necessary to repeat at length what was there said.

At that hearing the question of the constitutionality of the New Hampshire Blue Sky Law was not argued.

In defendant's present brief the question is revived, it being argued that these sales of stock were New York transactions and valid under the laws of that state, and that any act of the New Hampshire Legislature which would invalidate them is unconstitutional as an undue burden on interstate commerce. It is argued that this view of the law has not been determined by the United States Supreme Court.

It seems to me that defendant's contention is answered by the Supreme Court in the case of Hall v. Geiger-Jones Co., 242 U. S. 539, 557, 37 S. Ct. 217, 223, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643. It appears that the contention of the plaintiff now made did not escape the attention of the Supreme Court, for it is said: "The next contention of appellees is that the law under review is a burden on interstate commerce, and therefore contravenes the commerce clause of the Constitution of the United States. * * * The provisions of the law, it will be observed, apply to dispositions of securities *within* the state, and while information of those issued in other states and foreign countries is required to be filed,

* * * they are only affected by the requirement of a license of one who deals in them *within* in the state. Upon their transportation into the state there is no impediment,—no regulation of them or interference with them after they get there. There is the exaction only that he who disposes of them there shall be licensed to do so, and this only that they may not appear in false character and impose an appearance of a value which they may not possess,—and this certainly is only an indirect burden upon them as objects of interstate commerce, if they may be regarded as such.

It is a police regulation strictly, not affecting them until there is an attempt to make disposition of them within the state. To give them more immunity than this is to give them more immunity than more tangible articles are given, they having no exemption from regulations the purpose of which is to prevent fraud or deception. Such regulations affect interstate commerce in them only incidentally."

In the case of Merrick v. N. W. Halsey & Co., 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498, the facts indicate that the defendants sent into the state of Michigan their agents and employees who there solicited orders for securities and transmitted them to the complainant at Chicago, Ill., which orders were accepted and the securities so purchased were transmitted to Michigan. The question was the application of the Michigan Blue Sky Law. Mr. Justice McKenna says, page 242 U. S. 587, 37 S. Ct. 227, 231, "It burdens honest business, it is true, but burdens it only that, under its forms, dishonest business may not be done. This manifestly cannot be accomplished by mere declaration; there must be conditions imposed and provision made for their performance. Expense may thereby be caused and inconvenience, but to arrest the power of the state by such considerations would make it impotent to discharge its function. It costs something to be governed." See, also, Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 S. Ct. 224, 61 L. Ed. 493.

The defendant calls attention and seems to rely upon a class of cases construing a New Hampshire statute, General Laws, c. 109, § 18, making it penal to solicit orders in this state for the delivery outside the state of liquor to be sold in New Hampshire in violation of its laws. Two cases, Dunbar v. Locke, 62 N. H. 442, and Jones v. Surprise, 64 N. H. 243, 9 A. 384, were

determined by the Supreme Court of New Hampshire upholding the act. Then came Leisy v. Hardin, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128, declaring a similar statute unconstitutional as being an undue burden on interstate commerce. This case was followed by Durkee v. Moses, 67 N. H. 115, 23 A. 793, in which the Supreme Court of New Hampshire felt bound to declare the law unconstitutional. Counsel for the defendant argues that these cases are conclusive upon the instant controversy.

I cannot accept the defendant's statement that the Leisy Case and the Durkee Case are conclusive. The distinction is that in those cases the statute was attempting to bar the interstate shipment of an article of commerce. The New Hampshire Blue Sky Law makes no such attempt. It merely regulates sales within the state of New Hampshire without prohibiting interstate shipments.

Upon the authorities hereinbefore cited, I hold that the provision of the New Hampshire Blue Sky Law in controversy is constitutional.

■■■ Defendant's first contention is that the plaintiffs, by the acceptance of dividends and unreasonable delay, are barred from maintaining these actions by laches. The actions are for money had and received.

I entertain little sympathy for persons who invest in stocks and retain them until it is ascertained that they are of little value, and then attempt to recover back their money on the ground that the New Hampshire Blue Sky Law has not been complied with.

There is, however, no evidence in the case on which I can find when the noncompliance with the law first came to the knowledge of the plaintiffs.

But even if the date were fixed within the ordinary period of the statute of limitations which had not elapsed, laches cannot be set up as a defense to validate a contract which is against public policy.

The parties are not in pari delicto. The New Hampshire Legislature has enacted laws providing for the regulation of the sales of securities passed for the protection of its citizens, and any sales made in violation of the law are against public policy.

■■■ Defendant's second point is "The fact that Parent was not licensed does not entitle the plaintiffs to rescind." This claim is answered fully by Chief Justice Parsons in the case of Karamanou v. H. V. Greene Co., 80 N. H. 420, 423, 124 A. 373, 374, wherein he says: "The sale only is penalized, not the purchase. If the plaintiff has paid money or other thing to the defendant under the prohibited contract, the defendant cannot set up a title to such money or thing under the contract made in violation of law, and the plaintiff will be entitled to recover without proof of the defendant's bad faith or the lack of value in the securities if he returns them."

■■■ The next claim is that "The sales were made in New York, the New Hampshire Blue Sky Law has no extra territorial effect and therefore cannot make these sales void." I cannot accept this statement of the law. Many of the states in the Union have enacted so-called Blue Sky laws. If defendant's statement were true, all the defendant had to do was to establish his office in New York City and flood the country with securities, good or bad, and claim immunity of any breach of law of any state so long as it retained at its home office the right to confirm or reject any sale made by its agents elsewhere. If this is true the Blue Sky Law of New Hampshire and that of most other states may as well be scrapped. See Bothwell v. Buckbee-Mears Co., 275 U. S. 274, 48 S. Ct. 124, 72 L. Ed. 277; Chattanooga National Building & Loan Association v. Denson, 189 U. S. 408, 23 S. Ct. 630, 47 L. Ed. 870.

Most of the legal questions involved were considered by me in the case of Bartlett v. Doherty (D. C.) 8 F. Supp. 763, and it does not seem necessary to enlarge upon what was there said.

The defendant cites the case of Brocalsa Chemical Co. v. Langsenkamp (C. C. A.) 32 F.(2d) 725. It seems to me that this case is clearly distinguishable from the case at bar.

The case of Doherty v. McAuliffe, 74 F.(2d) 800, handed down by the Circuit Court of Appeals of this Circuit on January 4, 1935, is not determinative of the issues in the instant case. In that case the court was construing a Massachusetts statute. In this case a New Hampshire statute, one which has been construed by the Supreme Court of New Hampshire, is involved and is controlling.

In the action of Leon S. Knowlton v. Henry L. Doherty & Co., I find that the plaintiff is entitled to a verdict for the sum of $14,824.37, the amount paid for the se-

curities, less $345.67 cash dividends, making a balance of $14,478.70. I find the plaintiff is entitled to interest on this balance since the date of the writ, March 8, 1934, to be computed by the clerk of court.

In the action of Joseph O. Tremblay v. Henry L. Doherty & Co., I find that the plaintiff is entitled to a verdict for $3,312.-50, the amount paid for the securities, less $90.31, cash dividends, making a balance of $3,222:19. I find the plaintiff is entitled to interest on the balance since the date of the writ, March 8, 1934, to be computed by the clerk.

In the action of Fred G. Bartlett v. Henry L. Doherty & Co., I find that the plaintiff is entitled to a verdict for $750, the amount paid for the securities, and interest since the date of the writ, March 8, 1934.

 The evidence fails to disclose the date upon which the demand was made for the return of the money. In allowing interest, I have followed what I understand to be the New Hampshire rule, that interest may be computed from the date of demand, and the courts have determined that the bringing of an action at law is equivalent to a demand. I have therefore allowed interest from the date of the writs.