

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable William J. Lawson
Secretary of State
Austin, Texas

Attention:  Mr. Frank D. Wear

Dear Mr. Lawson:                    Opinion No. O-3193
                                    Re:  Whether or not Western Petro-
                                         leum Corporation, under the
                                         facts stated, is engaged in
                                         interstate commerce and re-
                                         lated questions.

        A request for opinion dated February 19, 1941,
requested by your predecessor in office, Honorable M. O.
Flowers, has been received and carefully considered by this
department.  We quote from said request as follows:

        "Honorable William B. Murray, attorney
    for the Western Petroleum Corporation, has re-
    quested this department for a ruling as to
    whether or not such corporation would be re-
    quired so comply with either the issuer's pro-
    visions of the Texas Securities Act or the pro-
    visions as to registration of dealers and
    salesmen under the following state of facts:

        "'Western Petroleum Corporation is a Wyom-
    ing corporation and has complied with the re-
    quirements of the Federal Securities Act of
    1933 and the Federal Securities and Exchange
    Act of 1934, as amended, by filing with the
    Commission the enclosed Schedule "D", consist-
    ing of 17 pages.  The company has, and proposes
    to comply with all requirements of the Commis-
    sion concerning reporting of sales, etc.

        "'The corporation does not propose to
    qualify in your state as a foreign corporation,
    nor do any intrastate business there, but pro-
    poses, however, to solicit offers for the pur-
    chase of royalties by resident salesmen who

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable William J. Lawson, Page 2

deduct commissions and remit the net sum with said offers, for acceptance or rejection, by the company in Wyoming."

"The form or offer of purchase to be used by such company is enclosed herewith.

"This department would appreciate your opinion as to the following questions under the state of facts hereinabove set out:

"(1) Is such corporation under such state of facts engaged in interstate commerce?

"(2) If you have answered 'Yes' to the above question holding thereby that such corporation under such state of facts and its agents are engaged in interstate commerce would such corporation and its agents be violating the provisions of the Texas Securities Act if they have made no attempt to qualify under the issuer's provisions thereof?

"(3) If you have answered 'Yes' to the first question holding thereby that such corporation and its agents are engaged in interstate commerce would such corporation or its agents be violating the provisions of the Texas Securities Act if they fail to register under the provisions of such Act pertaining to the registration of dealers and salesmen?"

The form or offer of purchase referred to by you is as follows:

"OFFER TO PURCHASE ROYALTY

"I, the undersigned, do hereby offer to purchase from Western Petroleum Corporation, a Wyoming corporation, a non-producing overriding royalty interest of _____ thousandth ( ____ /10000th,) for the sum of _____ Dollars. This offer

Honorable William J. Lawson, Page 3

is not binding upon the corporation until
accepted by its duly authorized officers in
Wyoming, it being understood that this is an
interstate commerce transaction. Receipt of
the sum of _____ Dollars (together with
a note in the sum of $_____), is hereby ac-
knowledged. The undersigned also acknowledges
receipt of a Schedule "D" relating to said non-
producing overriding royalty interests.

"IN WITNESS WHEREOF, the undersigned has
hereunto set his hand and seal this ____ day
of _____, 194__.

"
_____        _____
          Salesman                          Name

"Accepted by:
Western Petroleum Corporation

"By _____        _____
                                              Address"

It is well settled law that where the federal
government has assumed full jurisdiction of matters within the
scope of its power, its regulations are exclusive within the
field involved (See the case of Oregon-Washington R & N C. v.
Washington (U.S.) 70 Law Ed. 482).

It has likewise been settled by the Supreme Court
of the United States that state regulatory laws are valid unless
congress has exclusively occupied the field or unless the state
law directly burdens interstate commerce. (See authorities
collated in opinion No. 0-2459 of this department, a copy of
which is enclosed herewith for your information.)

Section 77r of Title 15, U.S.C.A., a portion of the
Federal Securities and Exchange Act, reads as follows:

"Nothing in this sub-chapter shall affect
the jurisdiction of the Securities Commission
(or any agency or office performing like func-
tions) of any state or territory of the United
States, or the District of Columbia, over any
security or any person." (Underscoring ours)

Honorable William J. Lawson, Page 4

Judge St. Sure, of the Northern District of California, Southern Division, in construing the above quoted section, said:

"Defendants also call attention to Sec. 18 of the Act of 1933, which provides for 'state control of securities' as indicative of the intention of Congress to limit its legislation to activities in interstate commerce. There is no merit in the contention. The most that can be said for the section is that it probably gives concurrent jurisdiction to the Securities and Exchange Commission and the State authorities. There is no doubt that the Securities and Exchange Commission has jurisdiction of the matters here complained of." Securities and Exchange Commission v. Timetrust, Inc., 28 Fed. Supp. 34.

The contention has been frequently made that "Blue Sky Laws" or "Securities Acts" impose burdens upon interstate commerce and are, therefore, unconstitutional. Such contentions were, however, rejected by the Supreme Court of the United States in the case of Hall vs. Geiger-Jones Company, 242 U. S. 539. Also see annotations in 87 A.L.R. 46 et seq.

It will be noted that the Texas Securities Act makes it unlawful to offer for sale within the state securities without first having secured the required license as well as to sell within the state without the required license. (See Section 12 of Article 600a, Vernon's Annotated Texas Civil Statutes.) The Securities Act of Michigan is similar to the Texas Securities Act. The Supreme Court of Michigan in the case of People v. Augustine, 204 N. W. 747, held that for the offense of negotiating for sale unapproved securities in Michigan the actual sale need not be consummated in Michigan. In other words the negotiations were had in Michigan and the sale was consummated in New York. The Michigan Supreme Court held this to be in violation of the Michigan Securities Act. Also see the case of First National Bank of Pineville v. Wilson, 55 S. W. (2d) 657, (Supreme Court of Kentucky).

Honorable William J. Lawson, Page 5

We quote from the case of Bartlett v. Doherty, 10 F. Supp. 469, modified in some respects not material hereto in 81 F. (2d) 920, re-hearing denied 83 F. (2d) 920, certiorari denied 80 Law Ed. 1398, as follows:

"In defendant's present brief the question is revived, it being argued that these sales of stock were New York transactions and valid under the laws of that state, and that any act of the New Hampshire Legislature which would invalidate them is unconstitutional as an undue burden on interstate commerce. It is argued that this view of the law has not been determined by the United States Supreme Court.

"It seems to me that defendant's contention is answered by the Supreme Court in the case of Hall v. Geiger-Jones Co., 242 U. S. 539, 557, 37 S. Ct. 217, 223, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643. It appears that the contention of the plaintiff now made did not escape the attention of the Supreme Court, for it said: 'The next contention of appellees is that the law under review is a burden on interstate commerce, and therefore contravenes the commerce clause of the Constitution of the United States. * * * The provisions of the law, it will be observed, apply to dispositions of securities within the state, and while information of those issued in other states and foreign countries is required to be filed, * * * they are only affected by the requirement of a license of one who deals in them within the state. Upon their transportation into the state there is no impediment,--no regulation of them or interference with them after they get there. There is the exaction only that he who disposes of them there shall be licensed to do so, and this only that they may not appear in false character and impose an appearance of a value which they may not possess,--and this certainly is only an indirect burden upon them as objects of interstate commerce, if they may be regarded as such.

Honorable William J. Lawson, Page 6

> "'It is a police regulation strictly, not affecting them until there is an attempt to make disposition of them within the state. To give them more immunity than this is to give them more immunity than more tangible articles are given, they having no exemption from regulation the purpose of which is to prevent fraud or deception. Such regulations affect interstate commerce in them only incidentally.'

> " . . .

> "The next claim is that 'The sales were made in New York, the New Hampshire Blue Sky Law has no extra territorial effect and therefore cannot make these sales void.' I cannot accept this statement of the law. Many of the states in the Union have enacted so-called Blue Sky laws. If defendant's statement were true, all the defendant had to do was to establish his office in New York City and flood the country with securities, good or bad, and claim immunity of any breach of law of any state so long as it retained at its home office the right to confirm or reject any sale made by its agents elsewhere. If this is true the Blue Sky Law of New Hampshire and that of most other states may as well be scrapped. See Bothwell v. Buckbee-Mears Co., 275 U. S. 274, 48 S. Ct. 124, 72 L. Ed. 277; Chattanooga National Building & Loan Association v. Denson, 189 U. S. 408, 23 S. Ct. 630, 47 L. Ed. 870." (Underscoring ours)

The above case held that the New Hampshire Blue Sky Law, regulating sales of securities within the state without prohibiting interstate shipments was not unconstitutional as an undue burden on interstate commerce as applied to sales of stock in which orders were taken in New Hampshire and confirmations were made in dealer's New York office.

Whether or not the corporation involved herein is engaged in interstate commerce is entirely immaterial in view of our further answer with respect to the local agents.

Honorable William J. Lawson, Page 7

Requiring the local agents to take out permits in no way burdens the interstate business of the corporation; if it should be held that such business is interstate commerce.

While the local agents in any event would be required to comply with the requirements of our Texas Securities Act, yet, in view of the fact that the local agents in the present instance contemplate soliciting only with respect to the securities issued by this particular corporation, it would not avail them to take out permits, seeing, that under the express terms of our Securities Act, they would not thereby be authorized to offer for sale securities of a foreign corporation or solicit orders for a foreign corporation which itself had not taken out an issuer's permit.

Section 5 of our Texas Securities Act declares:

"No dealer, agent or salesman shall sell or offer for sale any securities issued after the passage of this Act, except those which come within the classes enumerated in subdivisions (a) to (q) both inclusive, of Section 3 of this Act, or subdivisions (a) to (l), both inclusive of Section 23 of this Act, until the issuer of such securities shall have been granted a permit by the Secretary of State, and no such permit shall be granted by the Secretary of State until the issuer of such securities shall have filed with the Secretary of State a sworn statement verified under the oath of an executive officer of the issuer and attested by the Secretary thereof, setting forth the following information: * * * "

In view of the above quoted Section it is our opinion that the local agents, even with a permit, would not be authorized to offer for sale the securities mentioned in your letter, unless and until the corporation shall have been granted an issuer's permit by the Secretary of State.

APPROVED APR 25, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

WJF:ej

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Wm. J. Fanning_
Wm. J. Fanning
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN