# Richmond

**ISAAC FASS, INCORPORATED v. LOUIS H. PINK, SUPERIN-
TENDENT OF INSURANCE OF THE STATE OF NEW YORK,
AS LIQUIDATOR OF THE AUTO MUTUAL
INDEMNITY COMPANY.**

November 24, 1941.

Record No. 2410.

Present, All the Justices.

The opinion states the case.

*Leonard G. Karp* and *James G. Martin & Son,* for the plaintiff in error.

*Michael B. Wagenheim* and *William G. Maupin,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Louis H. Pink, Superintendent of Insurance of the State of New York, as liquidator of the insolvent Auto Mutual Indemnity Company, a corporation chartered under the laws of that State, filed suit against Isaac Fass, Inc., a Virginia corporation with its principal office in Portsmouth, to recover certain assessments which the liquidator, pursuant to the New York statutes, had made on Isaac Fass, Inc., as the holder of two automobile liability policies issued to it by the Auto Mutual Indemnity Company. The policies were written by the Auto Mutual Indemnity Company, through its agent at Baltimore, Maryland, and covered the fleet of trucks and automobiles owned and operated by Isaac Fass, Inc. The policies provided that some of the insured vehicles would be "principally garaged and used" in Portsmouth, Virginia, and that others were to be "principally used" in Portsmouth, Virginia, and New York.

The only defense relied upon below was that the liquidator could not maintain this suit in a Virginia court because the Auto Mutual Indemnity Company had not complied with the provisions of our statutes relating to foreign insurance companies doing business within this State. The trial court was of opinion that this was not a sufficient defense, and judgment in favor of the liquidator for the full amount of the assessments followed.

The statutes of Virginia provide that before a foreign insurance company shall "transact any business in this State" it must obtain a license from the State Corpora-

tion Commission to do so, and that to this end it must, among other things, file a copy of its charter with the Commissioner of Insurance, must appoint the Secretary of the Commonwealth its statutory agent on whom process may be served, and must make a deposit of securities for the protection of Virginia policyholders. Code, §§ 4203, 4207, 4208, 4211. It is admitted that none of these things were done by the Auto Mutual Indemnity Company either before or since the issuance of the policies here involved.

The first contention of the plaintiff in error is that the issuance of the policies to it and to other residents in Virginia, on automobiles intended to be used in this State, constituted the transaction or doing of business in this State, and that since the insurance company, a foreign corporation, was not authorized to do so, it is prohibited by Code, § 3848 (as amended by Acts 1926, ch. 279, p. 481; Acts 1932, ch. 222, p. 406), from enforcing in any of our courts the contracts here involved.

The authorities are in hopeless conflict as to whether the writing of insurance on property within a State by a foreign corporation from an office in another State, and the collecting of premiums thereon through such foreign office, constitute the transaction or doing of business within the State where the insured property is located. This conflict accounts for the difference in the views expressed in the authorities cited to us by counsel for the respective parties in the case at bar. See 1 Couch Cyclopedia of Insurance Law, § 245b, where numerous cases on the subject are collected.

However, the view which we have taken of another phase of the matter, as we shall presently see, makes it unnecessary that we decide this question.

The plaintiff in error next contends that the State of Virginia should refuse to lend the aid of its courts to the enforcement of the contracts sued on, because, it says, they were procured or written in violation of the statutes of this State.

In support of this argument the plaintiff in error relies upon *Bothwell* v. *Buckbee, Mears Co.*, 275 U. S. 274, 48 S. Ct. 124, 72 L. Ed. 277. There a suit was brought in a Minnesota court by the liquidator of a Maryland insurance company to recover an assessment made pursuant to a policy for strike insurance which had been issued to a Minnesota corporation. The insurance company had not been domesticated in Minnesota and the policy had been solicited by one of its agents in that State contrary to its statutes. It was held that while the contract was valid in Maryland, where written, yet the State of Minnesota had the constitutional right to refuse the aid of its courts in enforcing the contract which had been procured in violation of its laws.

But the same situation does not exist in the case at bar. While Code, § 4235a (Acts 1934, ch. 302, p. 486), prohibits the solicitation in this State of applications for insurance by any insurance company which is not authorized or licensed to do an insurance business in this State, the record here fails to show how or where the policies issued to the plaintiff in error were solicited, whether by agents of the insurance company operating in this State or by correspondence or otherwise.

Again, Code, § 4222 (as amended by Acts 1936, ch. 104, p. 169), provides that: "Insurance companies, legally authorized to do business in this State, except life, title and ocean marine insurance companies, shall not make contracts of insurance or surety on persons or property herein, except through regularly constituted and registered agents of such companies residing in and having their principal places of business in the State of Virginia; * * *." But this statute, in terms, applies only to insurance companies "legally authorized to do business in this State". It has no application to the Auto Mutual Indemnity Company which had not been authorized to do business in Virginia.

Hence, we cannot say that the policies here were procured in contravention of either of these statutes.

█ The last contention of the plaintiff in error is that the State of Virginia should refuse to lend the aid of its courts in enforcing the contracts here involved because the policies required the insurance company to perform, and reserved to it the right to perform, in this State, certain acts, namely, the investigation, adjustment and settlement of claims against the insured, and the defense of suits which might be brought against the latter, and that the performance of these acts constituted the transaction of business in this State which was forbidden to the insurance company by our statutes since it had not been domesticated in this State. In our opinion this position is sound.

█ It is well settled that an insurance company which issues its policies upon property in another State is engaged in its business in that State when its agents are there under its authority adjusting losses covered by its policies and defending suits on behalf of the insured. See *Pennsylvania Lumbermen's Mut. Fire Ins. Co.* v. *Meyer,* 197 U. S. 407, 414, 415, 25 S. Ct. 483, 49 L. Ed. 810; *Commercial Mut. Acci. Co.* v. *Davis,* 213 U. S. 245, 255, 256, 29 S. Ct. 445, 53 L. Ed. 782; *Bothwell* v. *Buckbee, Mears Co., supra* (275 U. S. 274, 278, 48 S. Ct. 124, 72 L. Ed. 277).

In *Bothwell* v. *Buckbee, Mears Co., supra,* under the terms of the policy there involved, the insurance company had agreed to defend, on behalf of the insured, a Minnesota corporation, any suits or other legal proceedings brought by striking employees against it, and to pay any valid claims asserted against the insured. It also reserved the right to inspect the plant of the insured, located in Minnesota, and to interrogate persons connected with it. The Supreme Court held (275 U. S., at page 278) that, "All these things were activities of the insurance business which the company was prohibited by valid statutes from doing within the State" of Minnesota, since it had not been authorized to trans-

act business therein, and that although the contract was valid under the laws of Maryland, where written, nevertheless the State of Minnesota had the constitutional right to refuse to enforce the contract since it provided for doing within its borders acts prohibited by its laws.

The court pointed out (275 U. S., at page 276) that while under the principles laid down in *Allgeyer* v. *State of Louisiana*, 165 U. S. 578, 17 S. Ct. 427, 41 L. Ed. 832, and *St. Louis Cotton Compress Co.* v. *State of Arkansas*, 260 U. S. 346, 43 S. Ct. 125, 67 L. Ed. 297 (both of which are relied on by the defendant in error here), a State may not prohibit one of its citizens or residents from making a contract—that is, from doing an act—in another State, nevertheless the forum State could decline to lend the aid of its courts in enforcing such contract where the terms of the contract were obnoxious to its laws.

These principles were reaffirmed in the recent case of *Griffin* v. *McCoach*, 313 U. S. 498, 61 S. Ct. 1023, — L. Ed.—(decided June 2, 1941). In our opinion they are applicable to the case before us.

Under the policies here involved the insurance company agreed to defend, on behalf of the insured, any suits or legal proceedings which might be brought against the insured for damages arising out of the operation of the vehicles covered by the policies, and to pay, on behalf of the insured, all sums which the latter might become obligated to pay by reason of the liability imposed upon it by law for damages caused by accident arising out of the ownership, maintenance or use of the vehicles covered. It further reserved the right to make such investigation, negotiation and settlement as it deemed expedient of any claims or suits which might be brought against the insured. Since the vehicles covered in the policies were located in the city of Portsmouth, where the principal office of the plaintiff in error was and where they were likely to be operated, these covenants necessarily contemplated that the insurance

company, through its agents, would engage in activities in the State of Virginia which it was prohibited from doing since it had not been domesticated in this State.

In our opinion the State of Virginia has the constitutional right to refuse, and should refuse, the aid of its courts in enforcing these contracts since they provide for the performance by the insurance company of acts within this State which our laws expressly forbid it to perform.

The view we have taken of the matter makes it unnecessary that we decide the other questions raised in the briefs and discussed before us.

For the reasons stated the judgment complained of will be reversed and a final judgment will be here entered dismissing the suit instituted in the court below.

*Reversed and final judgment.*