No. 24,215.

J. S. Dey, *Appellee*, v. The Knights and Ladies of Security, alias The Security Benefit Association, *Appellant*.

SYLLABUS BY THE COURT.

1. Fraternal Insurance—*Terms of Certificate—May Be Changed and Modified—Change Binding Upon Members.* In 1895 an incorporated fraternal beneficiary association issued a certificate to a member, one provision of which was that on reaching 69 years of age he should be entitled to receive $900, to be deducted from the amount of the death benefit. The certificate recited that it was issued upon the express condition that he should in every particular comply with all the laws, rules and regulations of the order. One of its laws in force at the time empowered its National Council "to amend the Constitution, Ritual, Laws and Rules of Discipline." In 1898 the laws of the association were amended so that they no longer contained a provision for such a $900 payment, but did provide for annual payments of $300 after a member holding a $3,000 certificate should reach the age of 70 years and become physically disabled. In 1899 a statute was enacted for the regulation of such associations which expressly forbade the payment of any disability benefits at a younger age than 70 years, and by implication prohibited any payments because of age unless accompanied by disability. In an action brought by the holder of the certificate for the recovery of $900 on the ground of having reached the age of 69 years it is held that he was bound by after-enacted laws changing the rates and benefits; that the amendment of the laws of the order and the enactment of the

Dey v. Knights & Ladies of Security.

statute referred to cut off his right to recover on the ground of having reached a particular age, no disability being claimed. And it is further held that the action of the association in raising the amount of his monthly assessment from $3 to $3.60 was valid.

2. PLEADING AND PRACTICE—*Effect of Overruling Demurrer to Petition.* Where upon the overruling of a demurrer to a petition the defendant answers and goes to trial, taking no appeal from that ruling, the decision upon the legal questions involved does not become the law of the case, and he is entitled to whatever judgment the established facts warrant.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed March 10, 1923. Reversed.

*George R. Allen,* of Kansas City, and *Ed T. Hackney,* of Wellington, for the appellant; *A. W. Fulton,* of Chicago, Ill., of counsel.

*James Lawrence, W. H. Staffelbach,* both of Wellington, for the appellee.

J. S. DEY, of Wellington, *pro se.*

The opinion of the court was delivered by

MASON J.: In 1895 J. S. Dey became a member of the Knights and Ladies of Security, a fraternal beneficiary association incorporated in this state, known since its merger with a similar organization as the Security Benefit Association. His certificate contemplated the payment of $3,000 to his beneficiaries upon his death, and contained a provision to the effect that if he kept it in force and lived to be 69 years old he should then receive $900, to be credited upon the death benefit. He reached that age February 12, 1919. On March 1, 1920, he made a formal demand for the payment of the $900, accompanied by a showing of the facts. Payment was refused on these grounds among others: That in 1898 a change had been made in the by-laws under which instead of receiving a payment of $900 upon attaining the age of 69 a member in his situation upon becoming 70 years old and being physically disabled should be entitled to $300 a year for ten years if he lived that long, otherwise the unpaid part of the $3,000 to go to the beneficiaries; that such change was continued in effect by subsequent laws of the association; and that by a Kansas statute of 1899 such association as the defendant were forbidden to pay benefits to their members except in case of sickness or disability. He sued the association for its refusal to pay him the $900, complaining also of the increase of his monthly assessments from $3 to $3.60. Judgment was rendered awarding him $900, and an additional sum as reimbursement for the

additional 60 cents he had paid on a number of assessments, with an injunction against its further collection. The defendant appeals.

1. A law of the order in force at the time the certificate was issued contained a provision that the National Council should have the power "to amend the Constitution, Ritual, Laws and Rules of Discipline." In June, 1898, that body adopted a new set of laws, one of which provided that a member holding a $3,000 certificate upon becoming 70 years of age and being physically disabled should receive $300 a year during such disability until the entire amount (less a certain deduction) had been paid. The only by-law which had previously existed relating to the payment of $900 upon a member's attaining the age of 69 was one setting out a form of certificate to which that issued to the plaintiff conformed, and this was repealed in the course of the revision referred to, which substituted a form corresponding to the change already indicated.

In 1899 a statute was passed for the regulation of fraternal beneficiary societies, containing a provision that they might "make provision for the payment of benefits in case of sickness, temporary or permanent disability, either as a result of disease, accident, or old age" (Laws 1898, Special Session, ch. 23, § 1), which has in substance been preserved in later legislation. (Gen. Stat. 1909, § 4303; Gen. Stat. 1915, § 5401; Laws 1917, ch. 208, § 1; Laws of 1919, ch. 216, § 1.) This has been held to prohibit a contract for the payment of benefits upon the mere arrival at a certain age, unless accompanied by actual disability. (*Kirk v. Aid Association*, 95 Kan. 707, 711, 149 Pac. 400; *The State, ex rel., v. United Workmen*, 97 Kan. 585, 155 Pac. 785.)

One of the two conclusions of law made by the trial court reads:

"When plaintiff's certificate was issued its provisions were in violation of no law; it was a valid contract. And since the plaintiff at the time did not agree to be subject to any thereafter enacted rules that would change the terms of his certificate, the state statute of 1898 [referring to the one enacted in 1899, at the special session begun in 1898] and subsequent acts in relation to fraternal insurance do not apply, nor can any rule of the defendant without the consent of the plaintiff relieve the defendant of its legal obligations to pay according to the terms of the original contract."

This court is fully committed to the proposition that where a member of a mutual benefit society agrees to obey by-laws subsequently to be adopted he thereby authorizes a change of rates and benefits (*Moore v. Annuity Association*, 95 Kan. 591, 148 Pac. 981, and

cases already cited), and this is the view of a majority of the courts that have passed upon the question. (19 R. C. L. 1202, 1204; Notes, L. R. A. 1916 A 762; 11 A. L. R. 648.) The plaintiff's certificate recited that it was issued upon the express condition that he should comply with all the laws of the order, and the decision of the trial court as indicated by the language quoted appears to have been controlled by a belief that this agreement did not apply to a subsequently adopted law which changed the terms of the certificate. In *Miller v. National Council*, 69 Kan. 234, 76 Pac. 830, a certificate issued by the present defendant in substantially the same form as that here involved, under the same by-laws, was placed in the class of those the holder of which has made himself amenable to subsequent changes of rates, by reason of its containing a provision reading:

"This certificate is issued upon the express condition that the said insured shall in every particular, while a member of the order, comply with all the laws, rules and requirements thereof, and shall at his death be a member in good standing of said order." (p. 240.)

The scope of the decision is indicated by this extract from the opinion:

"The important question in this case is, Did the association, with the consent of plaintiff, reserve the power so to alter or amend its by-laws subsequently to the issuance of plaintiff's certificate as to increase the amount of his monthly assessments? . . . The condition in plaintiff's certificate that he should in every particular, while a member of the order, comply with all the laws, rules and requirements thereof, was a consent on his part not only to comply with the laws then in force, but also to comply with all reasonable rules and regulations that might be made thereafter in the interests of the association. Every person joining an association obligates himself, without so expressing it, to conform to, and comply with, all its existing laws; and, if the provision in the plaintiff's certificate means anything, it is that he agreed to comply with all laws then in force or subsequently to be enacted by the national council." (pp. 239, 241.)

The original decision in that case was to the contrary, holding the association to be without power to change its rates to the prejudice of those already holding certificates, three justices dissenting. (73 Pac. 88.) This circumstance makes it quite clear that the final unanimous conclusion of the court was not reached without a full appreciation of the force of the argument in favor of the other view. In the brief of the present plaintiff it is said of the Miller case: "The final decision was based on a misstatement of every material

fact." In saying this the plaintiff appears to have had in mind that the court assumed that the contract as originally entered into provided for the payment of an assessment of a fixed amount each month, while in fact the number of assessments per year was not expressly limited, the certificate providing for the payment of such sum (not exceeding an amount named) as might be raised by an assessment upon the death of the insured. Upon the death of a member notice was required to be given of the calling of an assessment. The practice appears to have been to make one assessment each month; the laws of the association moreover required the entry of "the regular assessment" to be dated the first of the month and provided for the use of the reserve fund whenever twelve assessments were insufficient to pay the death claims. Later by a change in the by-laws express provision was made for one assessment a month. The matter of the number of assessments, however, could hardly have any effect upon the questions whether the member had agreed to abide by subsequent changes in the by-laws, and if so whether this authorized changes in what by the terms of the certificate and under the existing by-laws he was to pay or what he was to receive. The doctrine of the decision in these respects has been regarded as the settled law of the state for many years, and we do not think it necessary to review the arguments for and against it. The power of a fraternal benefit society to change the rates to be paid and the benefits to accrue, as they are defined at the time the certificate is issued, is the same whether the provision defining them is incorporated in the certificate itself or is to be found only in the by-laws. The right to make the change, resulting from the consent of the member to abide by the laws of the order (expressly or by implication including those to be subsequently made), grows out of the character of the organization, which differentiates the transaction from an ordinary insurance contract.

The question whether an incorporated mutual benefit society has the power by subsequent changes in its by-laws to require a member to pay higher rates than those named in his certificate is one in which the decision of the court of last resort of the incorporating state is final. (*Royal Arcanum v. Green*, 237 U. S. 531.) The federal supreme court has upheld the authority of such a corporation, when chartered by congress, to raise its rates, notwithstanding at the time the certificate was issued a by-law provided that the

monthly payments should continue the same so long as the membership continued. (*Knights of Pythias v. Mims*, 241 U. S. 574; *Knights of Pythias v. Smyth*, 245 U. S. 594.) In the Mims case it was said:

"We assume without argument that by § 3 of the charter and his assent thereto the plaintiff became a member of the organization with whatever rights he might have as such. It is not to be conceived however that the charter was intended to create a privileged class or that the right of the corporation to amend its laws was less in his case than in that of one joining after 1894. As to later members we can have no doubt, notwithstanding the difference of opinion in state courts, that the right to amend extends to a change in the rates to be paid. Persons who join institutions of this sort are not dealing at arm's length with a stranger whose mode of providing for payment does not concern them, but only his promise to pay. They are joining a club the members of which have to pay any benefit that any member can receive. The corporation is simply the machine for collection and distribution. . . . The essence of the. arrangement was that the members took the risk of events, and if the assessments levied at a certain time were insufficient to pay a benefit of a certain amount, whether from diminution of members or any other cause, either they must pay more or the beneficiary take less. . . . If all other Fourth Class certificates were in similar form it may be asked whether it was reasonable to increase the assessments rather than to allow the payments to abate. The answer in addition to what we already have said is that unless the corporation continued to make substantial payments at death it could not go on. On the evidence, at the end of 1910 the plaintiff's certificate was worth very little or nothing. It well may have been thought better to rehabilitate the class rather than to allow their certificates to become waste paper. At all events that was the prevailing view in the republic to which the plaintiff belonged, and as we have said the charter authorized it to be enforced." (pp. 579, 581.)

If the legislature thought the payment of endowments at a fixed age, irrespective of actual disability, to be against the best interests of the public, it had the power to prohibit the carrying out of contracts for such payments, which were entirely valid when made, in accordance with the familiar rule that laws passed in the exercise of the police power are not rendered invalid because they incidentally destroy existing contract rights. (*Manigault v. Springs*, 199 U. S. 473; *Union Dry Goods Co. v. Georgia P. S. Corp.*, 248 U. S. 372; *Louisville & Nashville R. R. v. Mottley*, 219 U. S. 467; 6 R. C. L. 347; 12 C. J. 991-993.)

We cannot accept the conclusion of the trial court already quoted, if it is to be interpreted as denying the power of the defendant or of the legislature to alter the plaintiff's obligations and benefits as set out in the certificate.

The laws of the order enacted by the defendant in 1898 contained a section reading:

"Whenever a beneficiary member shall hold valid his beneficiary certificate until he shall reach the age of seventy years and becomes physically disabled such member, upon proof of such age and disability, shall be entitled to receive from the beneficiary fund ten per cent of the amount of his beneficiary certificate annually while such disability continues, upon the date of his certificate until the face of such certificate has been paid, less the amount due the reserve fund, which amount shall be deducted from the first payment: *Provided,* That in the event of the death of such member the beneficiary named shall be entitled to the balance due upon such beneficiary certificate."

As already indicated, the by-law prescribing the form of certificate was changed so as to correspond with the foregoing provision. No express statement was anywhere made in the new laws that this change was or was not intended to apply to the holders of certificates already issued.

The statute of 1909 already referred to contained these provisions:

"A fraternal beneficiary association is hereby declared to be such a corporation, society or voluntary association of individuals, formed or organized into a lodge system with ritualistic form of work, or composed of members of an order or society having a lodge system with ritualistic form of work, or of such members, their wives, widows, or daughters, as shall make provision for the payment of benefits in case of death, sickness, or temporary or permanent disability, and shall be carried on for the sole benefit of its members and their beneficiaries, and not for profit. Every fraternal beneficiary association as herein defined shall have a representative form of government, with provisions for corporate meetings, and, subject to compliance with its constitution and laws, shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent disability, either as a result of disease, accident, or old age: *Provided,* The period of life at which payment of physical-disability benefits on account of old age commences shall not be under seventy years." (Gen. Stat. 1915, § 5401, Laws 1898 [special session], ch. 23, § 1.)

"All such associations coming within the description as set forth in section 1 of this act, organized under the laws of this or any other state, province, or territory, and now doing business in this state, may continue such business: *Provided,* That they shall show to the satisfaction of the superintendent of insurance that their plan of organization is in keeping with section 1 of this act. All such societies shall hereafter be governed by this act. . . ." (Gen. Stat. 1915, § 5402, Laws 1898 [Special Session], ch. 23, § 2.)

"The superintendent of insurance of this state shall, upon the application of any association now organized and having the right to do business within this state as provided by this act, issue to such association a permit in writing, authorizing such association to do business within the state, for which certificate and all proceedings in connection therewith such association shall

pay to said superintendent of insurance a fee of twenty-five dollars; and any association of the character described in section 1 of this act, organized under any other law of this state and now doing business therein, may reincorporate under the provisions of this act by resolution of their governing body, certified to the superintendent of insurance." (Gen. Stat. 1915, § 5406, Laws 1898 [Special Session], ch. 23, § 6.)

The plaintiff questions the application of this statute to the defendant. The last section quoted from authorizes a reincorporation of an already existing society, and it is not claimed that this has been had. It also authorizes an existing society to continue in business upon receiving a permit from the superintendent of insurance, and there is no affirmative showing of the issuance of such a permit. However, the second section from which quotation is made declares explicitly that all associations coming within the description set out in the preceding section—which covers the defendant—"shall hereafter be governed by this act." As the defendant has continued in business its compliance with the law may be presumed, and we think it is clearly within the operation of the statute.

In 1902 the "Official Organ" of the defendant published a report made to the executive committee of its national council by two of the three members of its law committee, giving an opinion that certificates already issued were not affected by the provision of the statute that "the period of life at which payment of physical-disability benefit on account of old age commences shall not be under seventy years." The same publication included a statement to financial secretaries by the national secretary quoting the executive committee to the effect that where new certificates were issued to replace old ones the holder might elect to have either the old or new form followed. The plaintiff still holds his original certificate. We do not regard the view taken by the officers of the order as concluding or estopping the defendant. Nor do we think an estoppel resulted from various statements and predictions made by the defendant's officers concerning its plans and prospects, which proved over optimistic. The situation is quite different from that presented in *Hart v. Annuity Association*, 86 Kan. 318, 120 Pac. 363, where after a change of rates the association continued to accept payments from a member on the old basis until the right which he sued to enforce had fully ripened.

We think the change in the laws of the association made in 1898 show a purpose to substitute an annual payment upon actual dis-

ability (after the age of 70) for the previous $900 payment upon the member's reaching 69. And we hold the statutory provisions which expressly prohibit disability benefits under the age of 70, and by implication (as already interpreted) limit them to cases of actual disability, to apply to all certificates whether issued before or after the enactment of the statute. In *Kirk v. Aid Association,* 95 Kan. 707, 149 Pac. 400, already cited, it was said of a certificate issued in 1893 which provided for the payment to the holder of a sum equal to half the amount of the death benefit, upon his attaining the age of 70 years:

"The statutes of this state [referring to the act of 1899] provide that fraternal beneficiary associations shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent disability, either as a result of disease, accident or old age: . . . This statute does not in terms permit the payment of any sum to the holder of a certificate upon his reaching the age of seventy years. In addition to reaching that age, he must be either temporarily or permanently disabled, by reason of his age. The certificates issued by the association must be those authorized by the statute, or they can not be enforced. The certificate issued by the defendant in this case provides for payment upon the holder's attaining the age of seventy years, without regard to disability. The statute does not authorize this payment." (p. 711.)

In that case the original agreement was held to exceed the powers of the corporation because its charter contained no provision authorizing the payment of benefits upon the mere basis of age. The defendant's charter was in the same condition in this respect. Because of the considerations already stated the defense of *ultra vires* set up by the defendant need not be passed upon.

On February 17, 1920, the national secretary of the defendant, in a letter to the plaintiff with reference to his application for the payment to him of $900, said in effect that under a law of the association enacted October 1, 1919, the plaintiff, because of his reaching the age of 70 after January 1, 1920, was required, in order to obtain the benefit of the disability provision, to make monthly payments of $32.85 for the period of ten years, over which the installments extended. The actuary who had drawn the law testified that the secretary misinterpreted it; that the monthly payments referred to were required to be made only until the plaintiff should reach the age of 70 and become disabled. The secretary's interpretation makes the payment more than the amount to be received, a construction of course not to be adopted if any other

is open. The real meaning of the by-law, however, need not be determined, for the plaintiff is not claiming under the provision for ten annual payments to a member over 70 years old who is physically disabled, but is standing on the terms of his certificate, asking the payment of $900 because of his having reached the age of 69, making no claim of actual disability.

The other conclusion of law made by the trial court reads:

"The rates and rules provided by the defendant placing the plaintiff and a small number of like certificate holders with an apparent attempt to so regulate the assessments, dues and premiums as to practically make this class carry its entire load of insurance is so inadequate and unreasonable as to render it void so far as the plaintiff is concerned."

In several states it has been held that in a readjustment of rates the older members of a fraternal benefit association cannot be put into a class by themselves and compelled to carry their own insurance. (Note, 11 A. L. R. 655-657.) We need not now pass upon that question. We do not think the raising of the defendant's monthly assessment from $3 to $3.60 was unreasonable. In readjusting rates and benefits such an association has some latitude in the choice of methods and working out of details (*Uhl v. Life Association,* 97 Kan. 422, 155 Pac. 926), and the evidence does not in our opinion justify a finding that the limits of reasonable action in this regard were exceeded.

2. The defendant filed a demurrer to the petition, which was overruled, and the ruling has not been appealed from, this appeal having been taken more than six months later. The plaintiff contends that the ruling having become final the decision of the legal questions involved became the law of the case, preventing the rendition of any judgment in conflict therewith. The failure of the defendant to appeal from the overruling of the demurrer within six months prevented him from asking a reversal of that ruling, but as the defendant answered and went to trial it is entitled to such judgment as the facts and law warrant, irrespective of whether or not the petition stated a cause of action. It has never been the practice in this state to regard the overruling of a demurrer as settling the law of the case where no judgment was rendered upon it, and of course none could be rendered upon it where an answer was filed and a trial had.

The judgment is reversed, and the cause is remanded with directions to render judgment for the defendant.