JOHN F. ROBERTSON, Defendant in Error, v. THE SECURITY BENEFIT ASSOCIATION, Plaintiff in Error.—114 S. W. (2d) 1009.

Division One, April 1, 1938.

*A. W. Fulton* and *Lamm & Barnett* for plaintiff in error.

*Henry C. Salveter, F. M. Ross* and *Fred F. Wesner* for respondent.

BRADLEY, C.—This cause has been reassigned. Plaintiff sued to recover $512.50, for what is termed old age benefits or endowment, under a certificate of insurance issued to plaintiff by the Knights and Ladies of Security, November 24, 1893. Later, the name of the insurer became The Security Benefit Association. For convenience we refer to plaintiff in error as defendant, and to defendant in error as plaintiff, as styled below.

Defendant was organized under the laws of Kansas and the home office is at Topeka. Plaintiff's original certificate for $2000 was issued in 1893, but in 1895, the amount was reduced to $1000. The certificate provided that when insured reached the age of sixty-two, he would be paid $512.50, whether disabled or not. Plaintiff arrived at the age of sixty-two November 24, 1934, and thereafter sought to collect the $512.50. Payment was refused and this suit followed, resulting in a verdict and judgment for plaintiff in the sum sued for, and defendant brought the cause to this court by writ of error.

We do not deem it necessary to refer at length to the petition. It is alleged that defendant is a Kansas corporation and that plaintiff regularly paid his dues and assessments from the time he became a member until he reached the age of sixty-two, and had in all things performed his part of the insurance contract.

The answer alleges that defendant is a fraternal beneficiary society organized and incorporated under the laws of Kansas, and authorized as such society to do business in Missouri (all of which was established by the evidence). It is admitted in the answer that plaintiff's certificate provided for the payment of the endowment when he reached the age of sixty-two, but defendant alleges that such provision was *ultra vires* and void. Defendant also pleaded the pertinent parts of its charter, by-laws, and certain statutes and Supreme Court decisions of Kansas, and these were introduced in evidence.

Defendant also alleges that on April 12, 1935, plaintiff made application to it for "a new form of certificate," and that in the application he agreed that "in consideration of the issuance of the new beneficiary certificate applied for under the plan specified above, I hereby surrender said Beneficiary Certificate No. 1948 (the one sued on) to The Security Benefit Association for cancellation and

I hereby, for myself and my beneficiaries, and for anyone claiming any right in, through or on account of said certificate, release said The Security Benefit Association from all liability thereunder." And it is alleged that the new certificate was issued and delivered to plaintiff. Other references to defendant's answer will be made hereinafter when necessary.

In reply plaintiff alleged that the certificate sued on is a Missouri contract; that he entered into the contract in good faith; kept and performed all conditions without objections by defendant; that his cause of action "accrued on November 24, 1934," and that on that date "the contract of insurance upon his part was fully executed," and that defendant is estopped to plead *ultra vires*. He further alleged that if the new certificate was fraternal, it was void under Section 5996, Revised Statutes 1929, because, at the time, he was over the age of sixty years.

Plaintiff further alleges in the reply that if defendant "has any instruments executed by him and purporting to be a release" of the certificate sued on, then such instruments "were wrongfully procured from plaintiff by defendant and its agents, through and by deception and false and fraudulent representations made and practiced upon" him; that defendant, through its agent, represented to him that the instrument (application for new certificate) signed by him "was solely and merely an application for another and different insurance contract" based on a level rate; that "defendant did then and there represent and lead this plaintiff to believe that the making of said application" for the new certificate "did not in anywise" affect the certificate sued on "or release it from the payments of the benefits then and there accrued to him" under the certificate sued on; that he relied on defendant's agent and signed the application for the new certificate; that he signed the application for the new certificate ignorant of its purport and effect.

Defendant assigns error on the refusal, at the close of the whole case, of its instruction in the nature of a demurrer to the evidence, on the admission of evidence, and on instructions given for plaintiff.

■ We are confronted at the outset with the question of jurisdiction. Plaintiff says that we do not have jurisdiction of the cause, while defendant says we have. One of the chief contentions of defendant is that the Supreme Court of Kansas, defendant's domicile, in Kirk v. Fraternal Aid Association, 95 Kan. 707, 149 Pac. 400, and in effect, in Dey v. The Knights and Ladies of Security, 113 Kan. 86, 213 Pac. 1066, ruled that defendant exceeded its charter powers in contracting to pay plaintiff the endowment sought to be recovered. Defendant pleaded the Kirk and Dey decisions and certain Kansas statutes, and also pleaded that under Section 1, Article 4, U. S. Constitution, the courts of Missouri are bound to give full

faith and credit to the Kansas Supreme Court decisions. This theory and contention was never abandoned.

Rechow v. Bankers Life Co., 335 Mo. 668, 73 S. W. (2d) 794, was an action for damages for an alleged breach of a life insurance contract. Defendant pleaded as *res adjudicata* of the matters urged by the plaintiff, a judgment of a district court, of Iowa (domicile of the defendant), which judgment was affirmed by the Supreme Court of that state, and defendant pleaded that under Section 1, Article 4, Constitution of the United States, the courts of Missouri were bound to give full faith and credit to the Iowa judgment and decision. It was held that jurisdiction of the Rechow appeal was in this court.

In the Rechow case it appears that the Bankers Life Company, defendant in that case, was organized in 1879, under the laws of Iowa, as an assessment company, and under the name of Bankers Life Association. It remained an assessment company until 1911. The assessments were not fixed in the assessment policies, but depended on the amount necessary and were made quarterly. Failure to pay an assessment forfeited a policy. In 1907, the Iowa Legislature enacted a statute prohibiting the writing of assessment insurance except by fraternal benefit associations and by companies previously authorized to write such, and the statute authorized the latter mentioned companies, by proceedings set out in the statute, to transform themselves into legal reserve or level premium companies. As construed by the Supreme Court of Iowa in Wall et al. v. Bankers Life Company, 208 Iowa, 1053, 223 N. W. 257, the statute authorized assessment companies, when so transformed, to cease writing assessment insurance. The Bankers Life Association, the assessment company, changed to a legal reserve company in October, 1911, under the name of Bankers Life Company, and ceased writing assessment insurance. All assessment certificate holders were notified of the change and given an opportunity to exchange their certificates for insurance on the level premium plan, the premium for which was higher than under the assessment plan. Plaintiff in the Rechow case did not change. By reason of the many changes and no new members coming into the assessment class, the number of that class "naturally dwindled." After the change the reserve accumulated under the assessment plan was exhausted by the early part of 1927.

Until the Wall case, supra (January, 1929), the company had been crediting to the assessment emergency fund a portion of the money paid in as premiums by level premium policyholders, a practice held illegal in the Wall case. "Beginning about with assessment No. 176, due in April, 1927, when the emergency fund was practically exhausted," the assessment on the assessment class "became very much higher." Rechow paid assessments 176 to 182, inclusive, under protest. He refused to pay assessment 183, and

sued to recover the assessments he had paid, and had judgment in the trial court for $1550.83. The appeal was to the Springfield Court of Appeals, which court transferred the cause to this court on the theory that a constitutional question was involved (58 S. W. (2d) 1099), and this court ruled that it had jurisdiction and reversed the judgment on the theory that the Iowa judgment in the Wall case was binding on the courts of this State under the full faith and credit clause of the Federal Constitution.

Barber v. Hartford Life Ins. Co., 269 Mo. 21, 187 S. W. 867, was cited in the Rechow case as supporting the ruling on the question of jurisdiction. The Barber case was an action on an assessment policy for $2000, by the widow (beneficiary) of the insured. An assessment (126) of $13 on the policy, with other dues, became due March 20, 1910. This assessment was not paid and the policy was forfeited. Barber died June 5, 1910. It was contended by plaintiff that the company had no lawful right under the policy to make assessment 126, and that it was excessive, and that the policy could not be lawfully forfeited for nonpayment. On the other hand it was contended that the assessment was lawful, was not excessive and that for nonpayment the policy could be lawfully forfeited. For the legality of the assessment defendant pleaded and sought to introduce in evidence a Connecticut judgment affirmed by the Supreme Court of Connecticut (domicile of defendant) in Dresser et al. v. Hartford Life Ins. Co., 80 Conn. 681, 70 Atl. 39. The Dresser case was in equity by Dresser and thirty other certificate holders "for their own benefit and for that of all other similarly situated certificate holders." The effect of the Connecticut court's holding was that the assessment challenged in the Barber case was legal.

Plaintiff in the Barber case recovered in the trial court and the appeal was to this court on the theory that a constitutional question was involved. Defendant contended that to exclude the Connecticut judgment deprived it of the benefit of the full faith and credit clause of the Constitution of the United States. This court, in the Barber case opinion, concerning the constitutional question said (269 Mo. 21, 187 S. W. 1. c. 870) : "We think the constitutional point well taken and shall consider the case in the light of the rejected evidence."

To support the contention that jurisdiction of the present cause is not in this court, plaintiff cites Early v. Knights of the Maccabees of the World (Mo.), 48 S. W. (2d) 890; Huckshold v. United Railways Company, 285 Mo. 497, 226 S. W. 852; Bolin et al. v. Sovereign Camp, W. O. W., 339 Mo. 618, 98 S. W. (2d) 681.

Plaintiff in the Huckshold case recovered a judgment for $2500 and defedant appealed to this court on the theory that a constitutional question was raised on the *voir dire* examination of jurors. It was held that no such question was raised and the cause was trans-

ferred to the Court of Appeals. The Early case and the Bolin case were transferred to the Court of Appeals on the ground that only the question of the *locus contractus* was involved.

In Esmar v. Haeussler et al., 341 Mo. 33, 106 S. W. (2d) 412, a question of jurisdiction of the appeal arose. The action was by a customer against his broker in St. Louis, for an accounting on transactions involving the purchase and sale of securities effected through the broker's correspondent in New York City. Plaintiff alleged that the transactions were controlled by the laws of New York. "Plaintiff requested and the court gave a declaration of law to the effect that whether or not the transactions constituted legal purchases of securities for plaintiff was to be determined by the laws of the State of New York as interpreted and construed by the courts of said state."

In ruling the question of jurisdiction the court in the Esmar case said: "From the given declaration of law the real complaint of plaintiff's motion for new trial is that the trial court erred in not applying to the facts of the instant cases plaintiff's pleaded interpretation of the law of New York announced in an opinion by a court of said state in a controversy involving (not plaintiff and defendants) independent litigants. The correctness of such action on the part of the trial court may be determined without resort to a construction of the full faith and credit clause (Art. 4, Sec. 1, aforesaid) of the Federal Constitution." It will be observed that the New York opinion relied on did not involve any party concerned in the Esmar case, and concerned a different subject matter.

In the present case it is conceded that the contract of insurance sued on is a Missouri contract, hence there is no question of the *locus contractus.* We rule that jurisdiction of the present cause is in this court.

We now reach what may be termed the demurrer to the evidence offered by defendant at the close of the whole case. There are two questions raised by the demurrer, viz.: Are we bound, under the full faith and credit clause of the Federal Constitution, by the decision of the Supreme Court of Kansas in the Dey case, supra, 213 Pac. 1066, and if not, do the facts respecting the alleged new certificate preclude recovery by plaintiff? It appears from the Dey case that Dey became a member of The Knights and Ladies of Security (same insurer as in the present case) in 1895. His certificate was for $3000, and contained a provision to pay him $900 when he reached the age of sixty-nine, regardless of disability, if he remained in good standing. He reached the age of sixty-nine February 12, 1919, and shortly thereafter made demand for the $900. Payment was refused because (213 Pac. 1. c. 1067):

"That in 1898 a change had been made in the by laws under which, instead of receiving a payment of $900 upon attaining the age

of 69, a member in his situation upon becoming 70 years old and being physically disabled should be entitled to $300 a year for 10 years if he lived that long, otherwise the unpaid part of the $3,000 to go to the beneficiaries; that such change was continued in effect by subsequent laws of the association; and that by a Kansas statute of 1899 such associations as the defendant were forbidden to pay benefits to their members except in cases of sickness or disability.''

Dey sued to recover the $900 and to recover back an increase that had been made in his assessments. In the trial court he recovered on both items. In the Dey case, as in the present case, there was a by-law in force when the certificate was issued providing that the National Council of the defendant had the power to amend the by-laws, and in 1898, the by-laws were amended and eliminated such endowment features as involved in the Dey case and in the present case. (This by-law was pleaded and introduced in the present case). The trial court in the Dey case held (213 Pac. 1. c. 1067):

''When plaintiff's certificate was issued its provisions were in violation of no law; it was a valid contract. And since the plaintiff at the time did not agree to be subject to any thereafter enacted rules that would change the terms of his certificate, the state statute of 1898 (referring to the one enacted in 1899, at the special session begun in 1898) and subsequent acts in relation to fraternal insurance do not apply, nor can any rule of the defendant without the consent of the plaintiff relieve the defendant of its legal obligations to pay according to the terms of the original contract.''

The Dey certificate and the present certificate provided: ''This certificate is issued upon the express condition that the said insured shall, in every particular, while a member of the order, comply with all the laws, rules and requirements thereof.''

The Supreme Court of Kansas held that the quoted provision in Dey's certificate was tantamount to his consent ''not only to comply with the laws then in force, but also to comply with all reasonable rules and regulations that might be made thereafter in the interests of the association.''

In the Dey case the Supreme Court of Kansas quoted from the Kirk case (Kirk v. Fraternal Aid Association, 95 Kan. 707, 149 Pac. 400), which case involved a similar question as in the Dey case. The excerpt quoted in the Dey case from the Kirk case follows:

''The statutes of this state (referring to the act of 1899) provide that fraternal beneficiary associations shall make provisions for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent disability, either as a result of disease, accident or old age. . . . This statute does not in terms permit the payment of any sum to the holder of a certificate upon his reaching the age of seventy years. In addition to reaching that age, he must be either temporarily or per-

manently disabled, by reason of his age. The certificates issued by the association must be those authorized by the statute, or they cannot be enforced. The certificate issued by the defendant in this case provides for payment upon the holder's attaining the age of seventy years, without regard to disability. The statute does not authorize this payment.''

And in the Kirk case it was held that the provision in the certificate to pay the amount provided for, in what may be termed the endowment feature, was held to be *ultra vires* and void because the charter of the association concerned in the Kirk case had no provision authorizing the payment of benefits upon the mere basis of age. And the court stated in the Dey case that the charter of The Knights and Ladies of Security (insurer in the present case) was in the same condition respecting authority for the payment of benefits upon mere basis of age. And as we read the Dey opinion the holding was that the agreement to pay an endowment at a certain age, regardless of disability, was *ultra vires* and void.

The Barber case, supra, 269 Mo. 21, 187 S. W. 867, in which this court held that the assessment there involved was void, and in which case the trial court refused to admit in evidence the Connecticut judgment, reached the Supreme Court of the United States and the judgment was reversed. [Hartford Life Ins. Company v. Barber, 245 U. S. 146, 38 Sup. Ct. 54, 62 L. Ed. 208.] In the opinion it is stated:

''At the trial the Connecticut judgment was offered and excluded and the jury were instructed that the defendant must prove that an assessment was made by the directors of the company and that it was not for a larger amount than was necessary to pay death losses up to that time after giving Barber credit for his *pro rata* share in the mortuary fund; that if there was money on hand in that fund, and unless the defendant had 'so proved,' it could not declare the insurance forfeited on that account. This instruction was in the teeth of the Connecticut adjudication which held that it was proper and reasonable for the company to hold a fund collected in advance in order to enable it to pay losses promptly.''

Prior to the Barber case, 269 Mo. 21, 187 S. W. 867, reaching the Supreme Court of the United States, the case of Hartford Life Ins. Company v. Ibs, 237 U. S. 662, 35 Sup. Ct. 692, 59 L. Ed. 1165, had been ruled by that court, and in the opinion the judgment in Dresser et al. v. Hartford Life Ins. Co., 80 Conn. 681, 70 Atl. 39, supra, was considered. The Ibs case was a Minnesota case (Ibs v. Hartford Life Insurance Company, 121 Minn. 310, 141 N. W. 289, Ann. Cas. 1914C, 798. It is pointed out in the Barber case opinion by the Supreme Court of the United States that in the Ibs case ''the character of the business arrangements (of the Hartford Life Insurance Company) was explained and it was decided that the Dresser judgment binds all

certificate holders of the class to which Barber belonged.'' And it was further stated that ''the Missouri Court indicating some dissatisfaction with the company and the judgments in Connecticut and here, sought to justify a different result by distinctions that seemed to us unreal.''

In Mixer v. Modern Woodmen of America (Neb.), 197 N. W. 129, the validity of a by-law which provided that absence of a member unheard of should not give any right to recovery on any benefit certificate, until the member's expectancy had expired, was in question. The Supreme Court of Nebraska, in a memorandum opinion, for the reasons given in Garrison v. M. W. A., 105 Neb. 25, 178 N. W. 842, and in other cases cited, affirmed a judgment for the plaintiff. [See, also, Cobble v. Royal Neighbors of America, 291 Mo. 125, 236 S. W. 306, 21 A. L. R. 1346.] The Mixer case reached the Supreme Court of the United States (M. W. A. v. Mixer, 267 U. S. 544, 45 Sup. Ct. 389, 69 L. Ed. 783), and the Nebraska judgment was reversed.

In the opinion (in the Mixer case) by Mr. Justice HOLMES, it is stated that ''the certificate seems to have been issued in South Dakota,'' in 1901, ''while the by-law relied upon to defeat recovery was not adopted until 1908.'' It is further pointed out in the opinion that the by-law had been held valid and binding upon the members of the Modern Woodmen by the Supreme Court of Illinois, the domicile of the M. W. A., although they had become members before the adoption of the by-laws. [See Steen v. M. W. A., 296 Ill. 104, 129 N. E. 546.] And it is further said in the Mixer opinion by the Supreme Court of the United States:

''The act of becoming a member (of a fraternal beneficiary association) is something more than a contract; it is entering into a complex and abiding relation, and as marriage looks to domicile, membership looks to and must be governed by the law of the State granting the incorporation. We need not consider what other states may refuse to do, but we deem it established that they cannot attach to membership rights against the company that are refused by the law of the domicile.''

In Green v. Supreme Council of the Royal Arcanum, 206 N. Y. 591, 100 N. E. 411, it appears that the defendant was a fraternal beneficiary society organized under the laws of Massachusetts. The amount Green was required to pay, according to his certificate, was $1.80 per assessment, and he paid up to 1898 at that rate. In 1898 the system was changed by the society whereby a member paid monthly and the payments were higher than theretofore. After the change Green paid $3.16 per month until 1905. In that year the dues were again increased and Green's monthly assessment was $6.87. He paid the increases under protest until February, 1910. In February, 1910, he tendered the sum of $3.16, which was the amount of the assessment fixed in 1898. The tender was refused, and Green was threat-

ened with expulsion unless he paid the $6.87. Green sued in New York, "claiming that the increase in 1905 of the rates of assessment was illegal and in violation of his rights under his contract of membership as modified by the changes made with his consent in 1898." The purpose of the suit was "to obtain an adjudication of the rights of the parties under the contract between them." Shortly after the going into effect of the increased rates in November, 1905, sixteen members, "in their own behalf and in behalf of all other certificate holders" filed a bill in equity in Massachusetts to set aside the by-laws by which the rates had been increased. It was held by the Massachusetts court that the increase was valid and impaired no contract rights of certificate holders. [See Reynolds et al. v. Supreme Council of the Royal Arcanum, 192 Mass. 150, 78 N. E. 129.]

The answer in the Green case in New York, among other things, pleaded the Reynolds judgment in Massachusetts, and pleaded that under the Constitution of the United States the judgment in that suit was entitled to full faith and credit in New York. The Massachusetts judgment was offered in evidence, but was excluded. It was held by the Court of Appeals of New York (headnote 2, 206 N. Y. 591) : "The rights of the plaintiff are not affected by the fact that the defendant is a corporation organized under the laws of Massachusetts, nor by the provisions of the present statute of that state which was enacted subsequent to the time when plaintiff became a member of the association."

The cause reached the Supreme Court of the United States where the judgment was reversed. [Supreme Council of the Royal Arcanum v. Green, 237 U. S. 531, 35 Sup. Ct. 724, 59 L. Ed. 1089.]

In the opinion it is said: "It is not disputable that, disregarding details, all the rights asserted under the assignments of error come to one contention, that a violation of the full faith and credit clause of the Constitution of the United States resulted from refusing to hold that the rights of the parties were to be determined by the Massachusetts law and to apply that law, and in further refusing to give due effect to the decree rendered in Massachusetts concerning the subject of the controversy."

It was further held (by the Supreme Court of the United States) in the Green case in substance, as reflected in the headnote (237 U. S. 531) that "a fraternal and beneficiary society is, for the purpose of controversies as to assessments, the representative of all its members; and a judgment of the State of incorporation as to the validity of an amendment to the Constitution and by-laws must be given effect by the courts of another State."

There are other cases cited in the brief of counsel for defendant (in the present case) along the same lines as in the cases above reviewed, as to the validity of plaintiff's certificate provision to pay him, at the

age of sixty-two, the sum of $512.50, but we do not deem it necessary to further extend the review.

Plaintiff contends that defendant cannot by subsequent by-laws nullify a provision in his certificate to pay him the endowment when he reached the age of sixty-two. As supporting this contention plaintiff cites Dessauer v. Supreme Tent, Knights of the Maccabees of the World, 278 Mo. 57, 210 S. W. 896; Traughber v. Knights of the Maccabees of the World, 227 Mo. App. 792, 57 S. W. (2d) 783; Dawson v. Knights of the Maccabees of the World (Mo. App.), 57 S. W. (2d) 748; Ragsdale v. Brotherhood of Railroad Trainmen, 229 Mo. App. 545, 80 S. W. (2d) 272; Roleson v. Grand Lodge Brotherhood of Railroad Trainmen, 229 Mo. App. 772, 84 S. W. (2d) 651.

The Dessauer case was a suit on a fraternal beneficiary certificate. A by-law of the defendant at the time the certificate was issued provided that in case a member committed suicide within five years after admission, his beneficiary was to be paid only the amount of the assessments that had been paid. Thereafter the by-laws were changed so as to prohibit the payment of any benefit in case of suicide at any time, except in an amount equal to twice the assessments paid. The member, Dessauer, committed suicide, but long after the lapse of the five years, but subsequent to the enactment of the new by-law. His beneficiary sought to recover the face amount of the policy. The defendant contended that recovery could only be had for twice the amount of the assessments paid, and made tender in that sum.

The plaintiff in that case recovered the face amount of the policy, $3000, with interest, in the trial court. The cause was appealed to the St. Louis Court of Appeals, which court reversed the judgment and remanded with directions to render a judgment for plaintiff for $744, being twice the amount of the assessments paid (176 S. W. 461). One of the judges dissented and the cause was certified to this court. It was held by this court that the defendant could not, by a subsequent by-law, alter the terms of the certificate, even though the application for the policy and the policy itself contained a provision that the member was to be bound by by-laws subsequently enacted.

The Traughber case, supra (57 S. W. (2d) (Mo. App.) 783 ), was an action to recover "benefits past due and for return of certain assessments paid." The cause was tried without a jury. In the trial court plaintiff recovered judgment for $1000 "on old age endowments" and $206 for excess premiums. The appeal was to this court, but was transferred to the Kansas City Court of Appeals by stipulation, because of the ruling in Early v. Knights of the Maccabees of the World (Mo.), 48 S. W. (2d) 890, cited supra. Among other things, the certificate in the Traughber case provided that when plaintiff attained the age of seventy he would be entitled to receive "such part of said endowment as provided in the laws of

the order which are now in force or which may hereafter be adopted.'' The by-laws in force at the time the certificate was issued provided, among other things, that a member attaining the age of seventy and who had paid all his dues, etc., ''shall be entitled to receive from the endowment fund annually 1/10 part of the sum for which his endowment certificate is issued.''

The by-laws were changed from time to time and the endowment provided by the by-laws when plaintiff became a member was repealed. Plaintiff accepted a new certificate for $1000, the rate for which was higher than the original certificate for $2000, and paid on this for some six years.

The Court of Appeals in ruling the Traughber case said that there was but one question involved, namely, ''Do the by-laws in force at the time of issuance of certificate, or the by-laws as amended control in this case?'' Following the Dessauer case, supra, and others, the judgment was affirmed.

The Dawson case, supra (57 S. W. (2d) (Mo. App.) 748) was similar in principle to the Traughber case. The Ragsdale case, supra (80 S. W. (2d) (Mo. App.) 272) went off on the theory that the full faith and credit clause of the Constitution of the United States as not involved. But in that respect, all that was involved was the question of *locus contractus*.

The Roleson case, supra (84 S. W. (2d) (Mo. App.) 651), involved the effect of a subsequent by-law and like the other cases cited, supra, on this point, it held that the holder of a certificate was not bound by subsequent by-laws.

It will be noted that none of these cases involved (according to the rulings) the full faith and credit clause of the Constitution of the United States.

Plaintiff in the present case further contends that when his certificate was issued the laws of this State authorized the endowment provision in his policy and that the defendant is bound thereby. Reference is made to Section 2823, Revised Statutes 1889, in force when plaintiff's certificate was issued. And on this point, plaintiff cites Marshall v. Knights of the Maccabees of the World (Mo. App.), 270 S. W. 418; McCoy v. Modern Woodmen of America (Mo. App.), 275 S. W. 552; State ex rel. National Council of Knights and Ladies of Security v. Trimble et al., 292 Mo. 371, 239 S. W. 467. Neither of these cases involved the full faith and credit clause.

The Marshall case, supra, gives a history of the statute referred to, with its subsequent amendments, but as we see the situation, neither the statute nor the decisions cited, help us in solving the constitutional question involving the full faith and credit clause of the Federal Constitution.

Plaintiff pleaded in his reply and makes the point here, that defendant is estopped to resist the enforcement of the provision in

plaintiff's certificate respecting the payment to him of the endowment at the age of sixty-two. The theory of estoppel is based upon the fact that plaintiff paid his regular assessments until he reached the age of sixty-two, and that after having fully performed his part of the contract, the defendant should not be heard to say that the endowment feature of his certificate is void.

The defendant in the Dey case (213 Pac. (Kan.) 1066), is the defendant in the present case. The validity of the same endowment feature was in question in the Dey case as in the present case. The same subsequent by-law was relied upon by defendant in the Dey case as in the present case. The policy provisions were the same. In other words, the subject matter in the Dey case was the same as in the present case. And defendant is a fraternal beneficiary association, and in such associations membership ''is something more than a contract; it is entering into a complex and abiding relation . . . and must be governed by the law of the state granting the incorporation.'' [M. W. A. v. Mixer, 267 U. S. 544, cited, supra.]

There is no claim that plaintiff paid any higher rate because of the provision in his certificate to pay him the endowment when he reached the age of sixty-two. Defendant was incorporated under the laws of Kansas, and sought and obtained the right and authority to do business in this State, and it did business in this State. ''When a corporation organized by one state, is authorized by the laws of another state to do business in the latter, it carries with it its charter and the law under which it is incorporated, and persons dealing with it, particularly those who are members of the association or corporation, are bound to take notice of the provisions for control of its affairs and the scope of the authority of its officers and agents, and especially of the business in which it can engage.'' [Smoot v. Bankers Life Association, 138 Mo. App. 238, 1. c. 464, 120 S. W. 719.] A number of authorities are cited in support of this statement of the law.

In Porter v. Loyal Americans of Republic, 180 Mo. App. 538, 1. c. 545, 167 S. W. 578, it this: ''Plaintiffs occupy the anomalous position of trying to make the defendant do something on the theory of waiver which the law would forbid it to do by express contract. Not authority is given by the law of the state for such association to contract with one who is not a member of the order. How, then, can it be held to do something by waiver which is contrary to the very law of its existence?''

In the situation here we do not think that defendant was estopped to rely upon *ultra vires*.

In view of the rulings by the Supreme Court of the United States, we are constrained to rule that the endowment provision in plaintiff's certificate was rendered unenforcible by the Supreme Court of Kansas in the Dey case, supra, and that under Section 1, Article 4

of the Constitution of the United States, we are bound to give full faith and credit to this Kansas decision. And so holding, we rule that the trial court should have given defendant's instruction in the nature of a demurrer to the evidence at the close of the case, on the ground that the decision of the Supreme Court of Kansas, in the Dey case, rendered void the endowment feature of plaintiff's certificate, and that under Section 1, Article 4, Constitution of the United States, the courts of this State are bound to give full faith and credit to that decision.

It is not necessary to rule other questions. The judgment should be reversed, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.*, absent.