MEINSEN et al. v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

No. 895.

District Court, W. D. Missouri, W. D.
Jan. 15, 1942.

certificate was effective at twelve o'clock noon of the day of its issuance at the home office in Ohio. Obviously, it was not the intention of the parties that it would or could be delivered in Missouri before twelve o'clock noon of the same day. The final act necessary to the completion of the agreement therefore occurred in Ohio with the result that it must be treated as an Ohio contract.

Miller, Gumbiner, Sheffrey & Van Valkenburgh, and Roscoe C. Van Valkenburgh, all of Kansas City, Mo., for plaintiff.

Gage, Hillix, Hodges & Cowherd, and Carson E. Cowherd, all of Kansas City, Mo., for defendant.

COLLET, District Judge.

Upon motion for new trial plaintiff assails the correctness of the conclusion heretofore reached upon two grounds. First, it is insisted that the opinion of the Kansas City Court of Appeals in Crohn v. Order of United Commercial Travelers of America, 170 Mo.App. 273, 156 S.W. 472, compels the conclusion that the contract herein involved is a Missouri contract and controlled by the Laws of Missouri, and, Second, that even should the contract be an Ohio contract the clause limiting the time for the bringing of this action is contrary to the established public policy of Missouri and will not be enforced by a Federal Court in Missouri.

While the Crohn case is highly persuasive, yet it is a "borderline" case and distinguishable from the present case on the facts. Unless required by the terms of the contract, delivery is not essential to the validity of a contract of insurance. The by-laws under consideration in the Crohn case required delivery by the Local Council. There is no such requirement here. This

The second proposition advanced by the plaintiff is, in my judgment, correct. While the Missouri Courts have given effect to limitation clauses such as the one involved here when those clauses were valid under the law of the locus con-tractus,[1] yet neither the diligence of counsel or the independent research of the Court has resulted in the discovery of an instance when the Missouri Courts have given effect to such a limitation against the objection thereto that to do so would contravene the established public policy of this State as declared by the Legislature in Section 3351, R.S.Mo.1939.[2] The disposition of the Missouri Supreme Court to give a broad construction to the full faith and credit clause of the Federal Constitution is indicated in opinions of that Court of which Robertson v. Security Benefit Ass'n, 342 Mo. 284, 114 S.W.2d 1009, and Clark v. Security Benefit Ass'n, 343 Mo. 263, 121 S.W.2d 148, are illustrative. But the noted tendency was more the result of the compelling effect of such cases as Hartford Life Ins. Co. v. Barber, 245 U.S. 146, 38 S.Ct. 54, 62 L.Ed. 208; Hartford Life Ins. Co. v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A. 1916A, 765; Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A. 1916A, 771, and Sovereign Camp v. Bolin, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45, 119 A.L.R. 478, than any apparent willingness on the part of the State Courts to voluntarily abrogate the established public policy of the State by enforcing contractual provisions, outlawed in this State, in favor of non-resident litigants. That it will not be required to do so is definitely established by the recent case of Griffin v. Mc-

---

[1] Typical of such cases are: Dolan v. Royal Neighbors of America, 123 Mo. App. 147, 100 S.W. 498; Roberts v. Modern Woodmen of America, 133 Mo.App. 207, 113 S.W. 726; Tuthill v. Fidelity & Deposit Co. of Maryland, Mo.App., 119 S.W.2d 468.

[2] "Sec. 3351. Contracts not to limit time for bringing suits.—All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void."

Coach, 313 U.S. 498, 61 S.Ct. 1023, 1027, 85 L.Ed. 1481, 134 A.L.R. 1462:[3]

"Rights acquired by contract outside a state are enforced within a state, certainly where its own citizens are concerned, but that principle excepts claimed rights so contrary to the law of the forum as to subvert the forum's view of public policy. Cf. Loucks v. Standard Oil Co., 224 N.Y. 99, 110, 120 N.E. 198. It is 'rudimentary' that a state 'will not lend the aid of its courts to enforce a contract founded upon a foreign law where to do so would be repugnant to good morals, would lead to disturbance and disorganization of the local municipal law, or, in other words, violate the public policy of the state where the enforcement of the foreign contract is sought.' Bond v. Hume, 243 U.S. 15, 21, 37 S.Ct. 366, 368, 61 L.Ed. 565. * * *"

That Section 3351, supra, has established a definite public policy of the State has long been recognized by the Missouri Courts. Karnes v. American Fire Ins. Co., 144 Mo. 413, 46 S.W. 166:

"The legislature determined that a sound public policy demands that the courts of the state shall remain open to litigants as long as their claims are not barred by the statute of limitations, and hence passed this act."

The Courts of Missouri have closed their doors to the citizens of that state who sought to enforce contractual limitations on the time when actions should be commenced which conflicted with this statute. With constitutional freedom to do so, it is unbelievable that non-residents would not receive the same treatment.

The facts in this case do not present a situation similar to those presented in Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 341, 74 L.Ed. 926, 74 A.L.R. 701. There the contract was made in Mexico with a citizen of Tampico, Mexico, and there assigned to Dick, a citizen of Texas, who resided in Mexico. Dick later removed to Texas and more than one year after the cause of action accrued, instituted an action against the Mexican corporation, summoning New York corporations as garnishees. The contract required action thereon to be brought within one year. A Texas statute, Vernon's Ann.Civ.St. art. 5545, contained a provision similar to Section 3351 of the Missouri Statutes.

It was contended that the contractual limitation was invalid because it violated the public policy of the State as expressed in the statute noted. The cause was determined by the Supreme Court under the due process clause and it was held that the Texas statute as construed and applied deprived the garnishees of their property without due process of law. The Court recognized the rule later announced in the Griffin case by stating:

"A state may, of course, prohibit and declare invalid the making of certain contracts within its borders. Ordinarily, it may prohibit performance within its borders, even of contracts validly made elsewhere, if they are required to be performed within the state and their performance would violate its laws."

The Court then points out that nothing in any way relating to the contract was ever done or required to be done in Texas. Referring specifically to the argument that the contractual limitation violated the declared public policy of the State the Court said:

"Doubtless, a state may prohibit the enjoyment by persons within its borders of rights acquired elsewhere which violate its laws or public policy; and, under some circumstances, it may refuse to aid in the enforcement of such rights. Bothwell v. Buckbee-Mears Co., 275 U.S. 274, 277, 279, 48 S.Ct. 124, 72 L.Ed. 277; Union Trust Co. v. Grosman, 245 U.S. 412, 38 S.Ct. 147, 62 L.Ed. 368; compare Fauntleroy v. Lum, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039. But the Mexican corporation never was in Texas; and neither it nor the garnishees invoked the aid of the Texas courts or the Texas laws. * * * We need not consider how far the state may go in imposing restrictions on the conduct of its own residents, and of foreign corporations which have received permission to do business within its borders; or how far it may go in refusing to lend the aid of its courts to the enforcement of rights acquired outside its borders. It may not abrogate the rights of parties beyond its borders *having no relation to anything done or to be done within them."* (Italics supplied).

The full faith and credit clause was not controlling in the Dick case.

In the Griffin case a policy of insurance had been issued on the life of a citizen and

---

[3] See, also, Pink v. A. A. A. Highway Express, 62 S.Ct. 241, 86 L.Ed. —, decided December 8, 1941.

resident of Texas payable to members of a common-law association domiciled in the State of New York who, under the Texas statute, had no insurable interest in the life of the resident of Texas. The locus contractus was within the State of New York. In determining whether the New York beneficiaries or the estate of the insured was entitled to the proceeds of the policy in an action brought in the Courts of Texas, the Supreme Court as heretofore noted, held that the law of Texas should be examined and if the public policy of the State of Texas prohibited the New York beneficiaries from participating in the proceeds of the policy for want of insurable interest, the Texas law should be applied although it resulted in an impairment of the contractual provisions valid under the laws of New York.

Comparison of the Griffin case with Home Ins. Co. v. Dick, thus discloses that a controlling distinction was the existence in one and the absence in the other, of rights acquired beyond the State's borders *relating to things done or to be done within the borders.*

The facts in the present case bring it within the rule announced in Griffin v. McCoach. The defendant was licensed in the State of Missouri with the resulting right to enforce its contracts in the Courts of that State. It maintained a Local Council in the State. The insured was a citizen of the State at all times. When the defendant entered the State for business purposes it agreed to abide by the laws of the State. Its business transactions with the insured prior to and subsequent to the issuance of the certificate were carried on through its Local Council located within the State. It knew when it issued the certificate that in the event of a controversy with the insured's beneficiary it would very probably be sued in the Courts of this State. It has obtained the advantages incident to citizenship within the State and should subscribe to the public policy of the State.

Plaintiff's motion for new trial is overruled. Plaintiff's motion for an amendment of the findings of fact heretofore entered is denied. Her motion to modify the conclusions of law heretofore entered so that as amended the conclusions will find the contract in question to be a Missouri contract is denied. Her motion for a modification of the Court's conclusion of law numbered IX is sustained and the Court's conclusion of law numbered IX is withdrawn and conclusions numbered VIII-a, VIII-b, IX-a, and X-a, filed herewith are substituted in lieu thereof.

Her request for modification of the Court's conclusion of law numbered X is granted to the extent that judgment will be entered for the plaintiff but denied in so far as it requests a judgment for vexatious delay and attorney's fees.

The judgment heretofore entered in this cause on December 17, 1941, will be set aside and a new judgment in favor of the plaintiff will be entered.

