## CIRCUIT COURT OF THE CITY OF RICHMOND

Diana Wade

    v.

Foreign Mission Board, etc.

Case No. LM-1103-4

Jennifer Wade et al.

    v.

Foreign Mission Board, etc.

Case No. LM-1104-4

April 3, 1989

By JUDGE RANDALL G. JOHNSON

These related cases are before the court on defendant's pleas of the statute of limitations, demurrers, and motions to dismiss. The motions for judgment allege that in November, 1976, George and Diana Wade entered into contracts with the Foreign Mission Board of the Southern Baptist Convention ("Board") to serve as career religious missiona-

ries in Africa. The contracts called the Wades's four minor children to accompany them to Africa and included expressed and implied promises that the Board and its officers, agents, and employees "would protect the health, welfare and safety" of the Wades and their children "by reasonable means available to the Board" during the time the Wades served as foreign missionaries with the Board.

In 1979 or 1980, while the family was still in Africa, Mr. Wade began to sexually abuse his oldest daughter, Renee, who was then 10 years of age. He also sexually abused Renee in 1981-82 while the family was on a one-year furlough in the United States. Shortly after returning to Africa after their furlough, Marion Fray, the Board's Associate Director of Southern African Missions, became aware of Mr. Wade's sexual abuse of Renee. When confronted by Fray, Mr. Wade admitted the abuse, promised he would stop, and pleaded with Fray not to tell Mrs. Wade or to take any official action. Fray requested that Mr. Wade submit to counselling and also give permission to have Renee attend counselling. Mr. Wade refuse both requests. Fray did not pursue the matter of counselling further, did not inform Mrs. Wade of the abuse, and made no official report to anyone. He did, however, tell Renee that it would be very harmful to her parents and would ruin her father's ministry as a missionary if any official report were made, and that it would harm her parents' marriage and ruin her life if she or Fray informed Mrs. Wade. Accordingly, he instructed Renee to say nothing about the sexual abuse to anyone. Because of Fray's position of authority and the fear he had put in her about ruining her parents' marriage, Renee, then age 14, did not inform anyone else. Later, Mr. Wade resumed his sexual abuse of Renee and began sexually abusing his other two daughters and his son. The family left Africa in 1984.[1]

The motion for judgment in LM-1103-4, filed by Mrs. Wade, seeks in separate counts to state causes of action for breach of contract, negligence, negligent infliction

---

[1] In its memoranda in support of its demurrers and motions to dismiss, the Board states that Mr. Wade was arrested in 1985 for child abuse in Alaska and that he is now incarcerated there. Those allegations, however, are not contained in the motions for judgment.

of emotional harm, intentional infliction of emotional harm, conspiracy, and "outrage." LM-1104-4, filed by Renee, who is now an adult, and by Mrs. Wade as next friend of the other three children, seeks to set out the same six causes of action. The Board has demurred to each count of the motions of judgment except Mrs. Wade's claim for breach of contract. In addition, the Board asks that all counts except the breach of contract counts be dismissed as being filed outside the applicable statute(s) of limitations. Finally, the Board seeks dismissal of Renee's claims, as well as both breach of contract claims, as improperly joined. All of the plaintiffs have abandoned their claims based on conspiracy, and those counts will be dismissed. The court's decision with regard to the other counts follows.

1. *Statute of Limitations*

The Board's pleas of the statute of limitations are raised only to the non-contract claims of the adult plaintiffs. With regard to Renee, the Board contends that the statute began to run on January 28, 1986, when Renee became 18. *See* Va. Code § 8.01-229(A)(1). The statute ran from that date until May 23, 1987, when the parties agreed to suspend its running. The suspension lasted until suit was filed. The Board's plea is based on its position that the one-year "catch-all" statute of limitations, Va. Code § 8.01-248, applies to Renee's non-contract claims.

With regard to Mrs. Wade, the Board argues that the statute of limitations began to run in December, 1983, when Renee informed Dr. Fray that she had been molested by her father. Thus, while the Board contends that Mrs. Wade's non-contract claims are also governed by the one-year statute, it argues that her claims are barred even by the two-year personal injury statute, Va. Code § 8.01-243.[2] The court rejects both arguments.

In *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981), the Supreme Court stated that a cause of action does not accrue until three essential elements

---

[2] The running of the statute of limitations on Mrs. Wade's claims was also suspended by the parties on May 23, 1987.

are present: (1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that duty or right; and (3) harm or damage to the plaintiff as a proximate consequence of the violation or breach. 221 Va. at 957. While Mrs. Wade's motion for judgment alleges that the first two elements, a legal obligation and a breach of that obligation, existed in December, 1983, the injury which she claims she suffered did not occur until she learned that the sexual abuse had been committed. It was not until then that she suffered the "extreme humiliation, emotional and traumatic shock and physical illness," etc., for which she seeks damages. As the Court stated in *Locke*:

> [T]he running of the [statute of limitations] is tied to the fact of harm to the plaintiff, without which no cause of action would come into existence; *it is not keyed to the date of the wrongful act* . . . . 221 Va. at 957-58 (emphasis added).

Thus, Mrs. Wade's non-contract causes of action did not accrue until she learned of her husband's sexual abuse of her children, and it was only then that the statute of limitations began to run. Since the court presently has before it no evidence from which it can be determined when Mrs. Wade learned of the abuse, the Board's plea cannot be sustained.

In addition, this court concludes that *Locke* also precludes the application of the one-year statute to Mrs. Wade's and Renee's non-contract claims. As a part of its discussion about when a cause of action accrues, the court stated:

> Code § 8.01-230 specifies that a cause of action for personal injuries shall be deemed to accrue and the prescribed limitation period shall commence to run *from the date the injury is sustained*. We construe the statutory word injury to mean positive, physical *or mental hurt* to the claimant, not legal wrong to him in the broad sense that his legally protected interests

have been invaded. 221 Va. at 957 (second emphasis added).

This court can think of no reason not to construe the word "injury" in § 8.01-243 also to include "mental hurt." Thus, this court holds that Mrs. Wade's and Renee's claims for emotional and mental injuries are claims for personal injuries subject to the two-year statute. (*See also Monroe v. Allied Chemical Corp.*, 480 F. Supp. 364 (E.D. Va. 1979); *Warren v. Bank of Marion*, 618 F. Supp. 317 (W.D. Va. 1985); and *Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 Bankr. 888 (W.D. Va. 1986); all holding that an action for emotional distress is an action for personal injuries governed by the two-year statute).[3] Accordingly, the Board's pleas of the statute of limitations are overruled.

## 2. *Contract Claims of the Children*

The Board's demurrer to the children's breach of contract claims is based on lack of privity. Since no evidence has been presented and since the motion for judgment does not state otherwise, it is presumed that Virginia's contract law applies. Section 55-22 of the Virginia Code provides, in pertinent part:

[I]f a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereof which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.

[3] This court is also of the opinion that the claims of Renee and the other children are based on more than just mental and emotional hurt. In the court's view, sexual abuse, which is necessarily accompanied by a physical touching, is a physical injury.

Here, the children's motion for judgment alleges that the Board contracted to "protect the health, welfare and safety of [the Wades] *and their children . . .* by reasonable means available to the Board . . . ." Emphasis added. The court does not agree with the Board's position that such promise only benefitted Mr. and Mrs. Wade. Instead, it directly benefitted the children. Indeed, this court can think of few situations where the intent of contracting parties to benefit third persons could be made any clearer. Since the motion for judgment specifically alleges a contract which contained promises intended to benefit the Wades's children, the Board's demurrer to the children's breach of contract claims will be denied.

3. *Negligence*

Both motions for judgment seek to state causes of action for negligence, to-wit: Dr. Fray's failure to inform Mrs. Wade or make any other official report of Renee's complaint. In its demurrers, the Board first argues that plaintiffs cannot recover for negligence because there is no duty in Virginia on the part of the Board or Dr. Fray to report the alleged abuse to Mrs. Wade or anyone else. While the court agrees that no such duty exists in Virginia,[4] the law is clear that in actions for tort, the substantive rights of the parties are controlled by the law of the jurisdiction where the injury occurred. *See generally,* 4A M.J., *Conflict of Laws, Domicile and Residence,* §§ 33 and 34, and the cases there cited.

Here the motions for judgment allege that Mr. Wade sexually abused his children in Zimbabwe and Botswana, Africa, and in Georgia and Alaska in this country.[5] The

---

[4] While Va. Code Section 63.1-248.3 imposes on persons employed in certain occupations and professions a duty to report the type of abuse alleged here, there is no allegation that Dr. Fray was employed in any of the occupations or professions enumerated in that section. The court is unable to locate any other statutory or common law duty in Virginia to report such activity.

[5] Actually, the motions for judgment contain specific allegations of the locations of the abuse only with regard to Renee. A fair reading of the motions for judgment, however, indicates that the abuse of the other children also oc-

motions for judgment also allege that each of those jurisdictions, as well as South Africa where Dr. Fray was physically located, had laws imposing upon Dr. Fray the duties sought to be imposed by plaintiffs. On demurrer, these allegations must be taken as true. Accordingly, the court overrules the Board's demurrers to the negligence claims.[6]

Moreover, aside from the duties allegedly imposed by the laws of the previously mentioned jurisdictions, there is also the duty allegedly imposed by the contract entered into by the Board and the Wades, and of which the Wades's children were third-party beneficiaries. Even in the absence of a duty imposed by statute or common law, a party who contractually undertakes to perform a duty must perform that duty in a non-negligent manner. *Blake Construction Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987). Since the motions for judgment specifically allege a duty imposed by contract and a negligent breach of that duty, the Board's demurrers must also be overruled for that reason.

Finally, the Board raises as part of its demurrers a claim of charitable immunity. The court disagrees with the Board's statement, contained in its supporting memorandum, that its charitable status "appears from the face of the Motion[s] for Judgment." Instead, the motions for judgment simply say that the Board is a Virginia corporation

---

curred in the same locations. In any event, the Board's demurrers do not raise the absence of such allegations as a ground for dismissal, and the court may not raise such ground sua sponte. See Va. Code Section 8.01-273. This is also true with regard to the location of Mrs. Wade's injury; that is, where she was when she learned of the abuse.

[6] It must be emphasized that the court's ruling on this issue is based solely on the allegations of the motions for judgment which, as already noted, must be taken as true. Yet to be decided are which jurisdiction's laws control, and whether Dr. Fray, located in South Africa, can be held to a duty imposed by a foreign jurisdiction with which he had no connection. Also to be decided is whether, as the Board asserts, the foreign jurisdiction's laws are repugnant to the public policy of Virginia and thus unenforceable here. See, e.g., Isaac Fans, Inc. v. Pink, 178 Va. 357, 17 S.E.2d 379 (1941). These and other questions will have to be addressed at a later time, preferably after some development of a record and further argument of counsel.

which employs missionaries. In the absence of a stipulation by the parties, the Board's status as a charity can only be determined after the presentation of evidence. The court makes no finding at this time whether the Board, even if it is a charity, is entitled to immunity.

### 4. *Negligent Infliction of Emotional Harm*

As previously noted, it is generally held that the right of substantive recovery for personal injuries is governed by the law of the sovereignty where the injury occurred. Thus, whether the present plaintiffs may recover for negligent infliction of emotional harm depends on whether such a cause of action exists in the place where the injuries are alleged to have taken place. Moreover, when a party relies on the law of a foreign jurisdiction as a basis for recovery in the forum state, such law must be specially pleaded. *See Dowell v. Cox*, 108 Va. 460, 62 S.E. 272 (1908). Here, there is no allegation that any of the jurisdictions in which an injury allegedly occurred recognizes a cause of action for negligent infliction of emotional harm. Accordingly, the Board's demurrers to the counts seeking to state such a cause of action will be sustained, with leave to plaintiffs to amend such counts, if they so desire, within 21 days. Of course, it will still have to be decided whether whatever laws are alleged are repugnant to the public policy of Virginia and thus unenforceable. *See* note 6 *supra.*

### 5. *Intentional Infliction of Emotional Harm*

What has just been said about plaintiffs' failure to plead the laws of any jurisdiction to support a cause of action for negligent infliction of emotional distress is also true with regard to intentional infliction of emotional distress. Even if such laws were specially pleaded, however, they cannot survive defendant's demurrer.

In order to maintain an action in Virginia for intentional infliction of emotional distress, the conduct complained of must be "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974). As previously noted, however,

Virginia has no law -- statutory or common -- which requires a person in Dr. Fray's position to make the reports which plaintiffs contend should have been made. Thus, the conduct complained of, if committed in Virginia, would be perfectly legal and non-tortious. This court cannot say that conduct engaged in in a foreign jurisdiction, even if unlawful or tortious there, is "outrageous and intolerable." Moreover, since the enumeration in Va. Code § 63.1-248.3 of specific occupations and professions which have the duty sought to be imposed by plaintiffs here evinces a conscious decision on the part of the General Assembly *not* to impose such a duty generally, this court believes it would be repugnant to the public policy of Virginia to hold that Dr. Fray's failure to perform that duty elsewhere is outrageous and intolerable. Accordingly, the Board's demurrers to plaintiffs' claims for intentional infliction of emotional distress will be sustained, without leave to plaintiffs to amend.

### 6. *Outrage*

This court is unable to find any Virginia case which recognizes a separate tort of outrage. To the extent other jurisdictions recognize such a tort, this court concludes that it is identical to intentional infliction of emotional distress. Accordingly, it will also be dismissed.

### 7. *Misjoinder of Tort and Contract Claims*

The Board seeks to dismiss the breach of contract claims of both motions for judgment as being improperly joined with the tort claims. Va. Code § 8.01-272, however, specifically allows a party to "join a claim in tort with one in contract provided that all claims so joined arise out of the same transaction or occurrence." *See also* Rule 1:4(K) of the Rules of the Supreme Court of Virginia. Because it is obvious that all of plaintiffs' claims arose out of the same transaction or occurrence, the failure of Dr. Fray to report the sexual abuse of Renee, defendant's motion will be denied.

## 8. *Misjoinder of Renee's Claims*

The final matter presently before the court is defendant's motion to dismiss Renee as a party plaintiff because her claims are improperly joined with the claims of the other children. The only reason stated in support of its motion is that Renee's claims "did not arise out of the same facts as those of the other plaintiffs." The court disagrees.

All of the claims of the children, including the claims of Renee, are based on one event: Dr. Fray's failure to inform Mrs. Wade or some appropriate official of Renee's complaint of sexual abuse. While Renee is alleged to have suffered such abuse both before and after she informed Dr. Fray, it is only the abuse which she suffered *after* her complaint, and the injuries flowing therefrom, for which she seeks damages. Thus, her claim is the same as those of the other children; that is, that the sexual abuse she suffered after her complaint to Dr. Fray was proximately caused by Dr. Fray's failure to report her complaint to her mother or proper authorities. This is no different than the claims of her sisters and brother. Accordingly, the Board's motion to dismiss her as a party plaintiff is denied. The court makes no ruling at this time whether separate trials are appropriate for Renee or any other child.